2005 VT 127

### Robert E. Cassani, Shirley Cassani and Melanie Ross v. Northfield Savings Bank and Ernest and Linda LaBrie

[893 A.2d 325]

No. 04-430

Present: **Reiber, C.J., Johnson and Skoglund, JJ., and Allen, C.J. (Ret.) and Gibson, J. (Ret.), Specially Assigned**

Opinion Filed December 16, 2005

*Paul S. Gillies* of *Tarrant, Marks & Gillies*, Montpelier, for Plaintiffs-Appellees.

*Oliver L. Twombly*, Barre, for Defendants-Appellants LaBrie.

¶ 1. **Skoglund, J.** Plaintiffs brought a complaint for reformation of a deed that purported to grant them an easement over a 49.5-acre parcel owned by defendants Ernest and Linda LaBrie, or, in the alternative,

for a way of necessity across defendants' land.[1] The court granted reformation of the deed, and defendants appealed. We reject most of the claims of error defendants raise on appeal, but we do not decide whether the easement established in the reformed deed is prohibited by, or impermissibly burdens, a previously existing right-of-way owned by defendants and two nonparty adjoining landowners. As explained below, this issue has been raised and will be resolved in another action that was filed by plaintiffs against defendants and the adjoining landowners during the pendency of this appeal. Accordingly, the matter is remanded for consolidation with the case pending before the Caledonia Superior Court.

¶ 2. Plaintiffs own a 178.5-acre parcel in the Town of Groton. Defendants own a 49.5-acre parcel that abuts plaintiffs' property to the south. Plaintiffs Robert and Shirley Cassani had previously owned both parcels. They acquired the 178.5-acre parcel in 1988 from Roy Van Vleck, Trustee for the Ricker Estate, and the 49.5-acre parcel in 1986 from the co-owners, defendant Ernest LaBrie and another person. Defendants' parcel was created by a 1981 grant by George Rock of three lots: lot 1, lot 1A, and lot 1B. Defendants' parcel is lot 1B, which borders lots 1 and 1A on their westerly edges. See the attached survey map excerpt for the locations of lots 1, 1A, and 1B, plaintiffs' parcel, and the Rock right-of-way.

¶ 3. In connection with this transfer by Rock, lots 1, 1A, and 1B were granted a common easement in a right-of-way that runs along the eastern edge of lot 1B, the 49.5-acre parcel now owned by defendants, and the western edges of lot 1A and lot 1, providing access to the three lots from town highway #24. The right-of-way extends from TH #24 for approximately 2,157 feet.

¶ 4. In 1995, plaintiffs ceded title to the 178.5-acre parcel in bankruptcy and lost the 49.5-acre parcel in a foreclosure action to defendant Northfield Savings Bank. In 1997, the Bank conveyed the 49.5-acre parcel to the LaBries. The habendum clause in the deed to the LaBries stated that "[t]he premises conveyed hereby are conveyed subject to and with the benefit of rights-of-way and easements of record."

¶ 5. By deed dated May 13, 1996 [hereinafter the Trustee Deed], the trustee of the Cassanis' bankruptcy estate conveyed the 178.5-acre parcel to Laurie Quensler, plaintiffs' daughter. The Trustee Deed

---

[1] References in this opinion to "defendants" denote the LaBries and not defendant Northfield Savings Bank because the Bank is not a party in this appeal.

purported to grant Quensler a fifty-foot perpetual easement for ingress to and egress from the parcel, by reference to an earlier deed that has sparked this controversy. Labeled the "Vermont Easement Deed," and dated February 23, 1996 [hereinafter the Easement Deed], that earlier deed appeared to convey a "50' perpetual easement, for the sole purpose of ingress and egress, over and on" the 178.5-acre parcel from the Bank, which at that time held title to the 49.5-acre parcel, to the bankruptcy trustee. As described in the Easement Deed, the easement ran "in a generally northwesterly direction across the lands of [the Bank] . . . along the existing lane or road."

¶ 6. In 2001, Quensler brought an action against the LaBries, entitled *Quensler v. LaBrie*, Docket No. 214-8-01 Cacv, for declaratory relief regarding the existence of a claimed right-of-way over defendants' property. The superior court granted summary judgment in favor of the LaBries in May 2002. The court held that the description of the easement in the Easement Deed was "so inaccurate" that it was not possible to construe it "to grant *any* effective right-of-way which actually reaches the 178.5-acre parcel." The court then suggested that Quensler might be entitled to reformation of the Easement Deed so as to state the true intent of the Bank and the bankruptcy trustee.

¶ 7. By June 2002, plaintiff Robert Cassani had again obtained title to the 178.5-acre parcel from his daughter, Quensler. He then filed suit,[2] seeking reformation of the deed and, in the alternative, a way of necessity across the 49.5-acre parcel owned by defendants.

¶ 8. During the period when plaintiffs owned the 49.5-acre parcel, plaintiffs used the premises as a camp, and they put a trailer on the land in 1987. As noted, plaintiffs purchased the 178.5-acre parcel in 1988 from the larger Van Vleck parcel. The Van Vleck parcel, as a whole, had road frontage on TH #26. The 178.5-acre parcel purchased by plaintiffs, however, did not have road frontage on TH #26 or any other public highway. Plaintiffs knew the land lacked road frontage, but intended to access it through the 49.5-acre parcel they owned, which abuts the larger 178.5-acre parcel. During their ownership of the two parcels, plaintiffs worked to extend the existing easement road, which served the 49.5-acre parcel, from TH #24 to the 178.5-acre parcel. Though defendants disagree as to the level of development of this extension, there is no dispute that a road existed.

---

[2] Plaintiffs Shirley Cassani and Melanie Ross — joint tenants with rights of survivorship in the 178.5-acre parcel, along with plaintiff Robert Cassani — were later added to the lawsuit as indispensable parties, on defendants' unopposed motion.

¶ 9. Prior to the 1996 sale of the 178.5-acre parcel to Quensler, the trustee in bankruptcy had become aware that the 178.5-acre parcel was being accessed through the 49.5-acre parcel, off of TH #24, so that there was a need for a right-of-way. The Bank agreed to convey an easement across the smaller parcel for the benefit of the larger parcel, to follow the road that was already in place and utilized by plaintiffs when they owned both parcels. To that end, the Easement Deed drawn up by the Bank referred to a right-of-way as appearing on a certain survey on the Milton Ricker Estate, i.e., the Van Vleck land. That survey, however, did not depict the right-of-way, nor did it specifically depict the 49.5-acre parcel.

¶ 10. The trial court found that the testimony of both the trustee in bankruptcy and the attorney for the Bank was credible, clear, and unrefuted that, at the request of the bankruptcy trustee, the Bank agreed to convey a right-of-way across the 49.5-acre parcel then owned by the Bank so that future owners of the 178.5-acre parcel would have access to that parcel through the right-of-way across the smaller parcel. The court further found that it was "clearly the intent" of both property owners to convey a specified right-of-way that they believed was accurately reflected in the description prepared by them and more particularly depicted on a survey map that had been recorded in the Groton Town Clerk's office. The court found that it was not until the decision in the declaratory judgment action brought by Quensler against LaBrie that the bankruptcy trustee and the Bank realized the Easement Deed did not effectuate their intent to convey the right-of-way. Both the trustee and the Bank were mistaken in their respective assumptions that the deed conveyed such a right-of-way. The court accordingly granted plaintiffs' claim for reformation.

¶ 11. On appeal defendants argue that: (1) the court was precluded from ordering reformation because the earlier declaratory judgment proceeding brought by Quensler established that the Easement Deed failed to convey a right-of-way; (2) the bankruptcy trustee, the counsel for the Bank, and the trial court all erred in believing that the parcel was landlocked, in that it is accessible by virtue of a right-of-way by necessity to TH #26 over the remaining Van Vleck lands, obviating the need for reformation; (3) reformation is not an appropriate remedy for a bona fide purchaser without notice; and (4) the court erred in additionally burdening the right-of-way benefitting the lots in the Rock subdivision without providing notice and an opportunity to be heard to the two other owners thereof.

¶ 12. For the reasons set forth below, we reject the first three arguments. We decline to decide the fourth issue, however, because the record in this case does not contain all of the relevant facts needed to resolve that issue, and because the same issue is under advisement before the same superior court judge in another case involving all the interested parties, including the adjoining landowners who are not parties to the instant action. In that case, *Cassani v. Hale*, Docket No. 256-12-04 Cacv, which was filed in March 2005, plaintiffs sued all three owners of the Rock right-of-way, asking the superior court to prevent the defendants from interfering with plaintiffs' use of the right-of-way. Thus, that case will allow the superior court to determine how, if at all, its decision to reform the Easement Deed affects the other owners of the Rock right-of-way. Given these circumstances, we remand the instant case for consolidation with the case pending below.

¶ 13. We turn now to defendants' other arguments challenging the trial court's decision to reform the Easement Deed. First, we reject defendants' claim that the *Quensler* declaratory judgment action foreclosed the court from entertaining the instant request for reformation. "The purpose of a declaratory judgment is to enunciate so far as is requested and appropriate the rights of the parties and nothing more." *Griffith v. Nielsen*, 141 Vt. 423, 427, 449 A.2d 965, 967 (1982). Put another way, a "declaratory action determines only what it actually decides and does not have a claim preclusive effect on other contentions that might have been advanced." Restatement (Second) of Judgments § 33 cmt. c (1982). Because a plaintiff seeking a declaratory judgment is "merely requesting a judicial declaration as to the existence and nature of a relation between himself and the defendant," it follows that either party "may pursue further declaratory or coercive relief in a subsequent action." *Id.* The Supreme Judicial Court of Maine recognized this principle in modifying a declaratory judgment that defined the scope of a prescriptive easement: "Nothing prevents either party from bringing . . . a new action because a declaratory judgment has preclusive effect in a subsequent action only as to the matters actually declared." *Bray v. Grindle*, 2002 ME 130, ¶ 20, 802 A.2d 1004.

¶ 14. Based on the foregoing, plaintiffs' current case seeking reformation of the Easement Deed is not precluded by the declaratory judgment rendered in *Quensler*. Plaintiffs in the instant case asked the court to alter the rights of the parties by reforming the deed, while the plaintiff in *Quensler* sought only a declaration of the extent of her rights under the Easement Deed. The claim in *Quensler* hinged solely

upon the rights and interests, if any, granted by the written instrument as executed and recorded in the land records. The court held that, notwithstanding the "obvious intention of both the Bank and the Bankruptcy Trustee to create an easement, or right-of-way for access to and from the 178.5-acre parcel then owned by the Trustee," the Easement Deed's description of the easement was "so inaccurate . . . as to go beyond mere ambiguity" and could not be interpreted "to grant *any* effective right-of-way which actually reaches the 178.5-acre parcel. The 1996 Easement Deed is simply, but fatally, mistaken." By contrast, the relief sought in the instant case required the trial court to look beyond the recorded instruments and determine whether the Easement Deed was incorrect and in need of reformation. Therefore, we hold that the trial court was not precluded by the declaratory judgment in *Quensler* from considering the reformation claim.

¶ 15. This conclusion is reinforced by the well-settled observation that reformation is a separate and distinct action sounding in equity, whose purpose is to correct mutual mistakes of the parties that have created a result neither party intended. See *Burlington Sav. Bank v. Rafoul*, 124 Vt. 427, 431, 209 A.2d 738, 741 (1965) ("[T]he court exercises the power of reformation where the mistake is common to both parties and by reason of it each has done what neither intended." (quotations omitted)); accord *Ward v. Lyman*, 108 Vt. 464, 472, 188 A. 892, 896 (1937). The Restatement (Second) of Contracts § 155 (1981) provides:

> Where a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing, the court may at the request of a party reform the writing to express the agreement, except to the extent that rights of third parties such as good faith purchasers for value will be unfairly affected.

"Once it has been established that there was an intended agreement that the formal writing mistakenly failed to express, equity will deal generously in the correction of mistakes." *deNeergaard v. Dillingham*, 123 Vt. 327, 331, 187 A.2d 494, 497 (1963).

¶ 16. Defendants next challenge the reformation by positing that the Easement Deed was the result of a mistaken belief that plaintiffs' parcel was landlocked. They suggest that their parcel was entitled as a matter of law to a right-of-way by necessity when it was subdivided away from the larger Van Vleck parcel. Even if this is true and the

trustee in bankruptcy and the attorney for the Bank were mistaken about the landlocked status of the property, it is of no moment. The Bank, the then-titleholder of defendants' parcel, agreed to deed an easement over the property to the trustee in bankruptcy, the then-titleholder of the 178.5-acre parcel.

¶ 17. There was no finding by the court that plaintiffs, or anyone else, deliberately misled the trustee in bankruptcy into obtaining the Easement Deed, or that plaintiffs understood that a way of necessity may have existed from the larger Van Vleck parcel. The only finding on this point was that plaintiffs purchased the 178.5-acre parcel knowing that the acreage was without road frontage, "but [they] intended to access the 178.5 acres through the 49.5-acre parcel . . . which they then owned." Nor did the court find any relevant misunderstanding involved in the acquisition of the Easement Deed from the Bank. The burden on the land was the Bank's to assume.

¶ 18. Next, defendants argue that reformation is not available against a bona fide purchaser.

> "A party who purchases property for value and *without notice* will have a defense in an action to reform a deed involving that property. The purpose of this limitation is clear. When a bona fide purchaser acquires an interest in land and makes an investment in the land, that party is entitled to have his or her expectations protected. . . . A person should not be deprived of his or her investment when he or she had no means of discovering the defect."

*Morse v. Murphy*, 157 Vt. 410, 416, 599 A.2d 1367, 1370 (1991) (mem.) (Gibson, J., dissenting) (quoting 6A R. Powell, Powell on Real Property ¶ 901[3], at 81A-166 (rev. ed. 1991)) (emphasis added); accord *Lockwood v. White*, 65 Vt. 466, 468-69, 26 A. 639, 640 (1893).

¶ 19. The court found that all the relevant evidence established that defendants had notice of a right-of-way across the 49.5-acre parcel. Evidence relied upon by the court included discussions between Robert Cassani and Ernest LaBrie in the spring of 1996 concerning the location of the right-of-way and the long familiarity of LaBrie with both the geography of the parcels and the existence of the road constructed by Cassani across the 49.5-acre parcel for access to the 178.5-acre parcel. Most persuasive on this issue was the letter prepared by defendant Linda LaBrie, in her offer to the Bank to buy the 49.5-acre parcel in October 1997, in which she acknowledged that "[t]he property contains a right-of-way through it, right past the camp,

that is the sole access for the Quensler acreage." The existence of the right-of-way was used in support of the price offered by defendants to purchase the property. Given this evidence of notice, the court correctly ruled that defendants were not bona fide purchasers without notice. Thus, reformation was available as a remedy for plaintiffs.

¶ 20. Finally, defendants argue that if an easement across their land does exist, then they should be permitted to designate its course. Defendants are correct that when a right-of-way is described in a deed in general terms, the owners of the servient estate initially have the right to designate its course. *Patch v. Baird*, 140 Vt. 60, 66, 435 A.2d 690, 692-93 (1981); *Lafleur v. Zelenko*, 101 Vt. 64, 70, 141 A. 603, 605-06 (1928). Here, the trial court concluded that, based on the evidence, it is possible to "establish the route of the right-of-way, despite the lack of survey or detailed metes and bounds description, upon review of Mr. Cassani's sketch of its location and confirmation of same on the ground." Thus, the trial court did not err by declining to allow defendants to designate the course of the easement.

*The superior court's August 12, 2004 decision and August 26, 2004 judgment order are affirmed to the extent that they grant plaintiffs' request for reformation of the February 23, 1996 Vermont Easement Deed. The instant case is remanded for consolidation with Docket No. 256-12-04 Cacv for the superior court to determine in the first instance whether the easement established in the reformed deed is legally permissible in light of the preexisting Rock right-of-way.*