# Robert Cassani, Shirley Cassani, and Melanie Ross v. Bruce Hale, Kathy Hale, Meadowsend Timberlands, LTC, Ernest LaBrie, and Linda LaBrie

[993 A.2d 422]

No. 08-351

Present: Reiber, C.J., Johnson, Skoglund and Burgess, JJ., and Pearson, Supr. J., Specially Assigned

Opinion Filed February 12, 2010

*Charles L. Merriman* of *Tarrant, Marks & Gillies*, Montpelier, for Plaintiffs-Appellees.

*Oliver L. Twombly*, Barre, for Defendants-Appellants.

¶ 1. **Burgess, J.** Defendants[1] appeal an order locating a right-of-way across their land and authorizing construction of a bridge on their lot to connect the right-of-way easement with the town highway. The newly located right-of-way runs briefly parallel to an existing right-of-way, the "Rock driveway," while the new bridge would lie right alongside an existing bridge connecting the Rock driveway to the town highway. Granted by George Rock, the common predecessor in title to defendants, the old bridge and Rock driveway branch off the town highway and allow access to the highway from the lots of the Hales, Meadowsend, and the Labries to the south of plaintiff-Cassani's lot. The bridge is almost entirely on Hale's lot. The Rock driveway ends far short of the Cassani lot.

¶ 2. We first considered this right-of-way dispute in *Cassani v. Northfield Savings Bank*, 2005 VT 127, 179 Vt. 204, 893 A.2d 325 (*Cassani I*), when defendants appealed the trial court's order authorizing reformation of an earlier easement deed. The terms of the easement indicated an intent to grant a perpetual right-of-way along a preexisting, but undefined, "lane or road" across the LaBrie land from the highway to plaintiffs' lot. In that case, the trial court concluded that mutual misunderstanding between the grantor and grantee of the easement as to the accuracy and sufficiency of their description justified reformation to comport with their original intent, and that it was possible to locate the easement from physical landmarks and a sketch-map in evidence. We affirmed the reformation order and remanded. *Id.* ¶ 1. Then pending in the court below was an action by plaintiffs to prevent their neighbors who used the Rock driveway from interfering with plaintiffs' use. At the same time, defendants-LaBrie argued in *Cassani I* that reformation of the easement deed would impose a servitude upon the Rock driveway and bridge, when the owners of that driveway were not parties to the reformation action. Accordingly, we noted that the case below would "allow the superior court to determine how, if at all," reformation would affect the other defendants, *id.* ¶ 12, and our remand ordered that the cases be consolidated for a determination of "whether the easement established in the reformed deed is legally permissible in light of the preexisting Rock right-of-way." *Id.* mandate. The trial court

---

[1] Appellants Hale and Meadowsend remain parties on appeal, but the issues raised for our review concern only the Labries' land.

carried out the objective of the remand, reforming the deed and resolving the dispute with regard to the affected parties. Again, we affirm.

¶ 3. In happier times, Cassani owned both the Cassani lot to the north and what became the LaBrie lot to the south. During this ownership, Cassani undertook to fashion a road from the Rock driveway, just after the bridge, across the south lot (which became the LaBrie lot) so that the Cassani lot was accessible from the town highway. While the Rock driveway ran northerly, straddling the joint boundaries of Hale and LaBrie, and then Meadowsend and LaBrie, the road built by Cassani crossed the southern lot (again, now the LaBrie's) past the bridge in a northwesterly direction to the Cassani lot. By 1995, this road was passable, although unfinished. It was this passage that the LaBries have since blocked, shortly after acquiring the property as described in ¶ 6, *infra*. (See *Cassani I* for an illustration of the underlying land).

¶ 4. Beginning in 1995, there were several changes in fortune and ownership that brought about the current dispute. That year, the Cassanis ceded title to the northern Cassani lot in a bankruptcy action and lost the south lot (now the LaBries') in foreclosure to Northfield Savings Bank. The Cassani lot was bought by the Cassani's daughter, Laurie Quensler, in May 1996. At that time, the Bank still owned the south lot. The Bank was made aware through discussions with plaintiffs of the need for a right-of-way and agreed to grant an easement following the road already in place.

¶ 5. The Bank issued an easement deed purporting to grant and convey a perpetual easement right to the bankruptcy estate across the south lot so that future owners of the Cassani lot would have access to and from the highway. However, neither the description in the deed nor any referenced survey accomplished a particular layout of the easement. The Vermont Easement Deed stated as follows:

> This easement is part of all and the same land and premises conveyed to the Northfield Savings Bank [in the Cassani foreclosure] and of record in Attachment Book 5 at Page 205 of the Groton Land Records. *This easement is depicted on a certain survey plan entitled "Property survey on a portion of Milton B. Ricker Estate . . . ."*

> Being a 50' perpetual easement, for the sole purpose of ingress and egress, over and on the above-described land and premises. The 50' easement created by this instrument commences on the *northwesterly edge of the right-of-way limits of Town Highway 24, and proceeds in a generally northwesterly direction across the lands of Grantor herein, along the existing lane or road, and terminates at the southern boundary of land of the Grantee herein*. This easement is for the benefit of and appurtenant to the land of the Grantee herein, and is for the benefit of and appurtenant to those lands and premises conveyed to Robert Cassani and Shirley Cassani . . . of record in Book 37 at Page 403 of the Groton Land Records, *all as more particularly shown on the above referenced survey plan*.

Vermont Easement Deed, February 23, 1996 (as recorded at Groton Town Clerk's Office, November 13, 1996) (emphasis added). The survey plan referred to was apparently a hand drawn sketch on a photocopy of an existing survey map, not a survey on file with the town. The parties testified to the existence of the survey during trial, but it was not put into evidence.

¶ 6. In October 1997, defendant Linda LaBrie sought to buy the south lot from the Bank. In a letter in which she offered only $25,000 for the lot, she justified the low offer in part with an acknowledgement that "[t]he property contains a right-of-way through it, right past the camp, that is the sole access for the Quensler [Cassani lot] acreage." *Cassani I*, 2005 VT 127, ¶ 19. The Bank sold the south lot for $32,000 subject to and with the benefits of rights-of-way and easements of record. Shortly after the purchase, the LaBries closed the access to the Cassani lot. In 2001, litigation over the easement commenced.

¶ 7. The history bringing this dispute to its present disposition has resulted in three separate cases and six court orders. In the first action, *Quensler v. LaBrie*, No. 214-8-01 Cacv (Pearson, J., May 9, 2002), the court granted defendants-LaBrie summary judgment in May 2002, and denied Quensler declaratory relief on the existence of the right-of-way because of defects in the Easement Deed. However, the court suggested that Quensler might have a remedy in a reformation action. *Id.* In 2002, Robert Cassani, after reacquiring title to the Cassani lot from his

daughter, filed just such a reformation action in *Cassani v. Northfield Savings Bank*, No. 158-6-02 Cacv (Manley, J., Aug. 12, 2004). The court granted, and we affirmed, the reformation and remanded for the trial court to determine where the right-of-way originally intended in the Easement Deed should be located. While *Cassani I* was pending, a third case was under advisement in the superior court in which plaintiffs sought declaratory judgment that their right to a servitude along the so-called "common right-of-way" included the Rock driveway, which served all the defendants' lots. *Cassani v. Hale*, No. 256-12-04 Cacv (Eaton, J., Dec. 5, 2005). The superior court decided that it was, as a matter of law, impossible for the Bank to have conveyed an easement that burdened adjoining property it did not own. Plaintiffs thus could not claim an easement in the full sixty-foot-wide Rock driveway, but only on the portion laying over the Labrie, or south, lot. The right-of-way intended by the Easement Deed had to be found entirely on the LaBrie land, the only property in which the Bank, as grantor, had ownership rights.

¶ 8. That decision and our remand in *Cassani I*, issued within days of each other, narrowed the remaining issues. *Cassani I* confirmed plaintiffs' legal right in a fifty-foot easement serving the Cassani lot, as long as the easement could be established without overburdening adjoining land owners. 2005 VT 127, ¶ 12. The remaining questions surrounded whether reformation of the fifty-foot Cassani easement, wherever it lay on the south lot, would overburden the common right-of-way or the defendants' use and enjoyment of their land; whether the portion of the common right-of-way within the easement could be traversed solely on the south lot or could be made usable; and why, given that the deed conveyed a fifty-foot-wide right-of-way, plaintiffs were pursuing access to a right-of-way now restricted to a thirty-foot width.

¶ 9. On remand, the trial court found that the right-of-way existed along, but not centered on, the Rock driveway: its entire fifty-foot width laying on the LaBrie parcel "until it leaves the Rock right-of-way and follows the course previously litigated along the LaBrie driveway . . . past the [LaBrie] camp and onto the 178-acre parcel." Where the right-of-way "bottlenecks" at the entrance to Town Highway 24, the right-of-way is limited to the actual width of the LaBrie parcel (i.e., thirty feet). The trial court order authorized construction of a bridge parallel to the existing bridge from the LaBrie property to the highway, declared that

plaintiffs and their successors in interest the right to use, travel and access the right-of-way, and ordered plaintiffs to survey and record the entire easement.

¶ 10. In addition, the court reviewed in detail the procedural history and legal standards that governed its decision to reform the deed and its analysis regarding the easement's burden to the servient estate. It explained the basis for reforming a deed where both parties agree the deed language fails to express the intent of the parties because of a mutual mistake in drafting the contents or actual terms of the writing. The court also explained that it concluded the LaBrie lot was not overburdened because the LaBries failed to produce evidence that the easement is or would be used in a way not known or anticipated in their purchase of the property and because the adjustments ordered by the decision, such as the new bridge, were necessary to achieve the intended highway access in the absence of a mutually agreed upon resolution.

¶ 11. Defendants appeal the trial court's order on six issues. Defendants present two theories supporting the claim that plaintiffs were estopped from litigating the location of the right-of-way below. First, they claim that our decision in *Cassani I* determined the "common" right-of-way was over the Rock driveway and that the superior court's decision "relocates" the right-of-way. Following from that claim, defendants claim the location of the right-of-way was settled by *Cassani I*, which precluded the subsequent litigation now on appeal. They also claim that the trial court order was invalid because it reformed the Easement Deed and established the right-of-way location without mutual consent of the owners of the dominant and servient estates. Finally, in three of their issues on appeal, defendants ask for the Court to review the trial court's factual findings. As explained below, we find no reversible error.

¶ 12. First, addressing defendants' claim that the superior court "relocated the right-of-way," defendants approach this issue as an impermissible violation of the scope of the remand in *Cassani I*. Contrary to defendants' claim that the trial court took unauthorized liberties in its ruling after the remand in *Cassani I*, the trial court's order complies with our instructions.[2] *Cassani I* repre-

---

[2] Indeed, if our mandate in *Cassani I* can be characterized as a pitched ball, then the trial court's decision hit it out of the park.

sented no final order as to the precise location of the fifty-foot right-of-way serving the Cassani parcel over the LaBrie land. Though we affirmed reformation of the deed, we did not undertake to determine the actual geographic location of the easement. To the extent that defendants argue that any easement location was established by our prior decision, they have misread the decision and the mandate.[3]

¶ 13. Defendants' contention that the right-of-way exists only over the Rock driveway is a legal impossibility. First, the Rock driveway does not reach the Cassani lot, and thus, could not be the "lane" described in the deed as that which "terminates at the southern boundary of land of the Grantee [Cassanis]." Second, after the December 2005 summary judgment in defendants' favor, plaintiffs' only remaining interest in the Rock driveway was thirty feet, or half its width, clearly in conflict with the fifty-foot right-of-way plaintiffs were entitled to under *Cassani I*. 2005 VT 127, ¶ 14. Finally, and as the trial court pointed out repeatedly, the easement deed cannot be read as intending such a grant because the land on which half of the Rock driveway lay was not owned by the Bank; it could not have conveyed what was not the Bank's to grant.

¶ 14. We next address defendants' claim that the trial court erred because it "relocated" the right-of-way, without the necessary permission of servient estate holders. Defendants cite *Sargent v. Gagne*, in support of this claim, relying on the general rule that, "a way, once located, cannot be changed thereafter without the mutual consent of the owners of the dominant and servient estates." 121 Vt. 1, 12, 147 A.2d 892, 900 (1958). This case is not on point in defendants' favor.

¶ 15. In *Sargent*, we were asked to resolve a dispute over access to a natural spring. We did not employ the above cited general

---

[3] The mandate stated:

> The superior court's August 12, 2004 decision and August 26, 2004 judgment order are affirmed to the extent that they grant plaintiffs' request for reformation of the February 23, 1996 Vermont Easement Deed. The instant case is remanded for consolidation with Docket No. 256-12-04 Cacv for the superior court to determine in the first instance whether the easement established in the reformed deed is legally permissible in light of the preexisting Rock right-of-way.

*Cassani I*, 2005 VT 127 mandate.

rule, but used it as a point of departure. *Id.* Instead, we denied the defendant's claims of exclusive access to the spring, citing the defendant's notice of and acquiescence to the plaintiffs' aqueduct construction. *Id.* at 13, 147 A.2d at 900.

¶ 16. Similarly here, the trial court found the LaBries had notice of the easement and used its existence to negotiate a lower purchase price. In addition, contrary to the contention that their consent was necessary prior to a trial court decision on the easement location, the LaBries have had ten years to seek out a mutually-consented-to solution to this dispute. It is clear that by the time this cause reached trial it would have been a futile exercise to seek defendants' consent on a location for the road on their property.

¶ 17. Second, defendants miss the purpose of the reformation action. On remand, the court did not "relocate" the easement, but fixed its location in the first instance. As the trial court explained, where the parties to a deed agree that by mutual mistake the deed fails to convey according to their intent, the court may act in equity to correct it. See *Brown v. Lamphear*, 35 Vt. 252, 259 (1862) (holding in a deed dispute that "where the mistake is of so fundamental a character that the minds of the parties have never, in fact, met; . . . equity will interfere . . . to prevent intolerable injustice"); see also *Burlington Sav. Bank v. Rafoul*, 124 Vt. 427, 431, 209 A.2d 738, 741 (1965). The trial court first tried to interpret the deed according to its plain meaning, but found it ambiguous.[4] We have previously stated, " '[r]eformation is appropriate, when an agreement has been made, or a transaction has been entered into or determined upon, as intended by all the parties interested, but in reducing such agreement or transaction in writing, . . . through the mistake common to both parties, . . . the written instrument fails to express the real agreement or transaction.' " *LaRock v. Hill*, 131 Vt. 528, 530-31, 310 A.2d 124, 126 (1973) (quoting *Churchill v. Capen*, 84 Vt. 104, 107, 78 A. 734, 736 (1911)). The party seeking reformation must prove mistake beyond a reasonable doubt. *deNeergaard v. Dillingham*, 123 Vt. 327, 331, 187 A.2d 494, 497 (1963).

---

[4] Indeed, the court found that by 2008, it had become "very clear . . . that parsing the 1996 Easement Deed for some insight . . . is an exercise in futility." Before briefly eulogizing its short, mostly useless existence, the trial court groaned, "We have tortured that document for meaning, and it has died on the rack."

¶ 18. Plaintiffs met this burden, convincing the earlier trial court that mutual mistake was at the root of the dispute over the easement. The trial court, in *Cassani v. Northfield Savings Bank*, No. 158-6-02 Cacv, concluded:

> There is no doubt that both the Trustee in Bankruptcy and the Bank intended to convey a right-of-way across the 49.5 acre parcel [now the LaBrie's Lot 1B], for the use and benefit of the [Cassani] parcel . . . . The fact that the road was not graveled or contoured in its entirety does not defeat the intent or ability to reform the deed to reflect the intent.

Here, both parties to the Easement Deed were mistaken that the words of the deed were sufficient to establish the intended conveyance. Though the Bank clearly intended to convey an easement over the land on which Cassani had begun to build a road, the description contained in the deed did not do that. Therefore, the right-of-way, though declared, was not legally fixed. Hence, the trial court did not venture beyond the scope of our mandate approving reformation. It heard extensive testimony and determined where the right-of-way was intended to lie.

¶ 19. The effect of the relief in reformation is to rewrite the easement deeded, rather than relocate it, so it reflects the actual intention of the parties at the time of the original deed. Of course, every deed reformation is still limited by the fact that a deed cannot convey anything more than what one holds and by the fact that reformation does not give a court power to establish a conveyance contrary to what the parties agree they intended in the first deed, or what the deed and extrinsic evidence indicate they must have intended. The court navigated well within this channel in reaching its decision.

¶ 20. We now address defendants' claim that under Vermont Rules of Civil Procedure, 56(c) & (d), an unopposed statement of undisputed material facts submitted for summary judgment is deemed admitted for all purposes including trial of any remaining issues even when the underlying motion for summary judgment is denied. In reviewing summary judgment rulings, we apply the same standard as the trial court. *Richart v. Jackson*, 171 Vt. 94, 97, 758 A.2d 319, 321 (2000). One party is entitled to summary judgment under Rule 56 "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the [re-

quired] affidavits, if any, . . . show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3). In determining whether material facts are still in dispute, the court must find that the facts bearing on the issue are clear, undisputed, or unrefuted. *Toys, Inc. v. F.M. Burlington Co.*, 155 Vt. 44, 48, 582 A.2d 123, 125 (1990). A court rendering judgment on a Rule 56 motion takes "the entire setting of the case" and all materials into account. *Stamp Tech, Inc. ex rel. Blair v. Lydall/Thermal Acoustical, Inc.*, 2009 VT 91, ¶ 11, 186 Vt. 369, 987 A.2d 292 (citation omitted).

¶ 21. Plaintiffs did not contest items three and four of defendants' statement of facts. Those items stated, first, that Vermont surveyors measure the center of a right-of-way easement on an existing roadway from the center of that roadway, and, second, that because of this practice, the fifty-foot easement must be centered on the Rock driveway, which defendants maintained was the "existing road" on which the easement lay. Defendants maintain that because the trial court stated in its denial of summary judgment that their facts were deemed admitted for the purposes of deciding that motion, the same factual assertion in items three and four of its Rule 56(c)(2) statement should have been deemed "admitted" for the remainder of the litigation, including trial.

¶ 22. Defendants are wrong for two reasons. As the trial court noted in its order, pertinent parts of defendants' Rule 56(c)(2) statement present legal conclusion and opinion, not facts. Even if admitted, the particular facts claimed by defendants were not dispositive to the summary judgment and were properly subject to trial.

¶ 23. Rule 56 allows a party to present affidavits in support of a motion for summary judgment, V.R.C.P. 56(e), but those affidavits must be made based on the personal knowledge of the affiant. Legal conclusions and opinions cannot be the proffered basis for rendering summary judgment. Cf. *Openaire, Inc. v. L.K. Rossi Corp.*, 2007 VT 120, ¶ 14, 182 Vt. 636, 940 A.2d 724 (mem.) (upholding summary judgment despite "some legal conclusions" in the supporting affidavit because the trial court did not rely on them and no objection was made at trial). Nor will they be admitted. The statements in items three and four are attributed to the affidavit of William Chase, a land surveyor. Item three states

a standard of surveying practice, about which Chase may be presumed to have personal knowledge and even expertise. However, the statement in defendants' item four is a legal conclusion about the Easement Deed. As the trial court correctly noted, Chase had no authority to draw legal conclusions about the deed. His statements amount to a legal opinion offered by a lay witness. Further, item four relies on a legal theory put forward by defendants that "common right-of-way" in the Vermont Easement Deed meant only the Rock driveway. The inadmissibility of item four renders item three, asserting a surveyor's common practice regarding roadway easements, irrelevant to defendants' claims.

¶ 24. Assuming without deciding that we took the fact asserted in item four of defendants' Rule 56(c)(2) statement as admitted for the purposes of the summary judgment, there is a second reason the court was not required to then admit the entirety of defendants' fact statement for trial. Where summary judgment is "not rendered . . . for all the relief asked and a trial is necessary," the rule provides for the court to "ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted." V.R.C.P. 56(d). Here, the trial court found fatal flaws with both plaintiffs' and defendants' motions and accompanying statements of undisputed material facts. Accordingly, both parties' motions were denied, and the court went forward with a trial upon the merits.

¶ 25. Defendants next argue plaintiffs did not meet their burden of proving that the new bridge could be constructed without harming the old bridge, or that a new bridge and new road could fit within the thirty-foot width joining the Cassani right-of-way to Town Highway 24. Factual findings are reviewed for clear error. We will uphold the trial court's findings of fact unless they are clearly erroneous, viewing the supporting evidence in a light most favorable to the prevailing party. *Town of Bethel v. Wellford*, 2009 VT 100, ¶ 5, 186 Vt. 612, 987 A.2d 956 (mem.). An appellant's claims "that there are other possible inferences to be drawn from the evidence . . . are not enough to overturn the trial courts findings." *Id.* ¶ 13. For a trial court's finding to be overturned, "an appellant must show there is no credible evidence to support the finding." *Highgate Assocs. v. Merryfield*, 157 Vt. 313, 315, 597 A.2d 1280, 1281 (1991).

¶ 26. The court found that a second bridge could fit within the bottleneck on the LaBrie property that gives access from the lot

to the town highway without imperiling defendants' existing bridge. It based its findings on the testimony of plaintiffs' witness, Charles Whitehead, as well as his prepared report and concept plan. The court considered the testimony of three other engineers on expense, technical difficulty, and impact on traffic flow, but found their testimony was "geared on the whole toward defendants' purely-speculative, factually unfounded anxiety that the Cassani parcel could, in theory, at some unknown future point, be divisible" and thus was largely irrelevant to the actual feasibility of constructing a second bridge.

¶ 27. The court weighed the evidence and found that plaintiffs met their burden. The court noted that the Whitehead plan was prepared after an inspection of the site and that the concept plan depicted enough room to build provided soil conditions, snow removal, and snow storage were addressed. Reviewing the evidence in favor of the prevailing party, we find no error. There is already a bridge built on the site. It is not inconceivable that a court could find it tenable to authorize construction of a second bridge there.

¶ 28. As to defendants' insistence that the court order awarding the right-of-way and ordering bridge construction should be reversed because they have offered to share the Rock driveway and the bridge, the persistence of this litigation belies their arguments. The decision was made to locate the right-of-way over a second bridge because the court below was not confident that the LaBries would adhere to its orders to cooperate on reconstruction of the existing bridge and any necessary widening of the right-of-way. Furthermore, defendants' arguments on this very appeal continue their long crusade to relegate plaintiffs' easement to the ineffective portion of the Rock driveway that was never the Bank's to convey.[5] The directive of the order below may not be easily followed, nor may its result be aesthetically pleasing, but it is a decision that follows the standards of the law.

*Affirmed.*

---

[5] The parties are still free, of course, to mutually resolve this long dispute and execute an agreed upon easement that obviates the need for a second bridge and avoids any widening of the right-of-way.