*Watson v. The Village at Northshore I Association Inc.*, No. 835-8-13 Cncv (Mello, J., July 25, 2018).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| SUPERIOR COURT | CIVIL DIVISION |
|---|---|
| Chittenden Unit | Docket No. 835-8-13 Cncv |

| | |
|---|---|
| ROY H. A. WATSON, III, <br>     Plaintiff, <br><br> v. <br><br> THE VILLAGE AT NORTHSHORE I <br> ASSOCIATION INC., <br>     Defendant. | |

### RULING ON CROSS-MOTIONS FOR ATTORNEY'S FEES AND COSTS, PETITION TO ENFORCE AMENDED MANDATE, AND MOTION FOR INJUNCTION

Plaintiff Roy H. A. Watson, III owns a residential unit at The Village at Northshore I, which is a common interest community comprising 136 units in twenty-five buildings. In August of 2013, Watson commenced this civil action seeking a declaratory judgment concerning several disputes he had with the Defendant, The Village at Northshore I Association, Inc. ("Northshore"), which governs the project. Superior Judge Helen M. Toor granted summary judgment in Northshore's favor on most of Watson's claims, and, after a bench trial, Judge Toor entered judgment in Northshore's favor on the rest of Watson's claims.

On February 9, 2018, the Vermont Supreme Court issued an opinion affirming Judge Toor's judgment in part and reversing it in part.[1]  *See* Watson v. The Village at Northshore I Association, Inc., 2018 VT 8.  The parties have now filed cross-motions for attorney's fees and costs.  Watson has also filed a Petition to Enforce Amended Mandate and a Motion for

---

[1] On March 29, 2018, in response to a request for re-argument, the Vermont Supreme Court amended its February decision in various respects.

Injunction.  Watson is represented by David J. Williams and Brooks G. McArthur, Esqs.

Northshore is represented by Christina A. Jensen, Esq.

*Cross-Motions for Attorney's Fees and Costs*

Vermont's Common Interest Ownership Act provides that a unit owner or association "may bring an action to enforce a right granted or obligation imposed by this title, the declaration, or the bylaws," and "[t]he court may award reasonable attorney fees and costs." 27A V.S.A. § 4-117(a).  Both parties seek an award of the attorney's fees and litigation costs they incurred in this five-year-long litigation.  Watson contends that he should be awarded the fees and costs that he incurred in prosecuting his claims because he prevailed on appeal on four of those claims.  Northshore argues that it should be awarded the fees and costs it incurred in defending itself against Watson's claims because it prevailed below and on appeal on nine of those claims.  For the reasons set forth below, the court denies Watson's request, grants Northshore's request in part, and denies the remainder of Northshore's request.

Watson prevailed on just four of his claims in this case.  The only claim that he won outright was Issue 1, in which he contended that Northshore's amended declaration, allowing the association to enter a homeowner's unit under certain circumstances, was overly broad.  The Vermont Supreme Court agreed and held that that provision was void to the extent that it purported to authorize access "beyond what is 'reasonably necessary' for '[m]aintenance, repair and replacement of the Common Elements." Watson at ¶ 23.  There is no evidence, however, that Northshore had ever attempted to enter Watson's unit for any unpermitted purpose before he filed this action.

Watson also prevailed on Issues 5 and 6, which the Vermont Supreme Court described as "the crux" of the appeal, Watson at ¶ 42, but his victory on those issues was only partial.  Watson

claimed that Northshore had unlawfully altered his 0.6781% undivided ownership interest in common areas when it allowed other unit owners to expand their units into the attic spaces above their ceilings and into the air space above their units. The Supreme Court rejected Watson's contention that expansions into attic spaces violated his rights, but the Court agreed that Northshore had violated governing law "when it authorized dormer expansions that impacted commonly owned airspace." Id. at ¶ 51. Watson's victory on these issues, however, was not only partial but also of limited tangible benefit to him, given his small percentage ownership interest in common areas generally, and given the intangible value of "airspace" in particular. Moreover, there is no reason to conclude that Northshore had acted with any wrongful intent. The Supreme Court expressly held that Northshore had acted pursuant to declaration amendments (i.e., its "Roof Structures Amendment" and "Tenth Amendment") that had been validly adopted by two-thirds of the unit owners. Id. at ¶ 47. In addition, Northshore's adoption of those amendments took place in a context complicated by the fact that several unit owners had already installed lofts and dormers before the amendments were adopted. Id. at ¶¶ 43-44.

Watson's only other victory was on Issue 10, in which he challenged an association bylaw requiring unit owners to give 48 hours' prior notice if they wished to address the Board of Directors at a Board meeting or an "Open Forum" period. The Supreme Court held that Northshore's 48-hour rule "is … valid as it applies to formal Board meetings but invalid to the extent that the Association may attempt to enforce it in the Open Forum periods." Watson at ¶ 73. Thus, Waton's victory on this issue was also only partial. Moreover, it is undisputed that Northshore's Board had never denied Watson "the right to speak at a Board meeting." Id. at ¶ 69.

3

In light of the foregoing, the court denies Watson's request for an award of fees and costs. Watson lost on most of the claims that he brought, he achieved only partial success on those claims that he did win, and he ultimately achieved limited tangible benefit from the suit. Post & Beam Equities Group, LLC v. Sunne Village Development Property Owners Association, 2015 VT 60, ¶ 48, 199 Vt. 313 (In awarding litigation fees and costs under 27A V.S.A. § 4-117(a), "the trial court has the discretion 'to focus on the significance of the plaintiff's overall results….'" (citation omitted)). In addition, Watson has made no showing of bad faith or deliberate misconduct on the part of Northshore. To the contrary, Northshore took reasonable positions in the case and ultimately prevailed on the great majority of Watson's claims. On Issues 5 and 6 in particular, although Northshore's position was overruled by the Court, its decision to advocate for that position was supported by amendments to its declarations that had been approved by more than two-thirds of its unit-owing members, and by the fact that several unit owners had already installed lofts and dormers. Arapaho Owners Ass'n. v Alpert, 2015 VT 93, ¶ 41, 199 Vt. 553 ("The extensive litigation, the positions taken by both sides, the oddity of the situation faced by the BOD created years earlier by a phantom unbuilt unit, and the struggles of both sides and the court below to resolve this situation support the court's discretion in awarding the attorney's fees and costs as it did.").

Northshore prevailed outright on nine of the claims in this case, and it obtained a partial victory on three additional claims, but it lost on Issues 5 and 6, "the crux" of the appeal. Because Northshore lost on the central issue in the case, the court cannot conclude that it substantially prevailed in the litigation. Birchwood Land Co. v. Ormond Bushey & Sons, Inc., 2013 VT 60, ¶ 36, 194 Vt. 478 ("Our cases are uniform in stressing that whether a party substantially prevailed is not a mathematical calculation based on the number of claims won or the amount of money

awarded…. Further, the trial court may decide that neither party substantially prevailed.").

Therefore, the court denies most of Northshore's request for attorney's fees and costs.

For the following reasons, however, the court will award Northshore the fees and costs it incurred in defending itself against three of Watson's claims. In Issue 7, Watson claimed that Northshore violated his rights when it refused to record a garage deed that contained an error in the chain of title. Northshore had offered to record the deed if Watson's attorney corrected the error, but Watson refused to correct it. The Supreme Court agreed with Judge Toor's finding that Watson had engaged in "intentional oppositional behavior," and the Court added that Watson had violated his duty of good faith and fair dealing. Watson, ¶¶ 56 and 58. Watson's bad faith in pursuing this claim warrants requiring him to reimburse Northshore the fees and costs it incurred in responding to it.

In Issue 8, Watson claimed that Northshore should be required to replace a fence behind his unit. In the course of pursuing that contention, Watson alleged that he had been asking Northshore to fix the fence since 2008, but that his requests had been ignored. At trial, however, it was demonstrated that Northshore had repaired the fence twice, once in 2010 and again in 2015. Watson then appealed that determination to the Vermont Supreme Court, which found "no basis upon which we can conclude that the court's findings are clearly erroneous." Watson, ¶ 60. Watson's contention with respect to this issue bordered on the frivolous.

The same is true with Issue 12. Here, Watson had issued a subpoena for documents related to the drafting of the "Tenth Amendment," but when the subpoenas were served on the witnesses Watson failed to include a check for the required witness fee. Judge Toor quashed the subpoenas because they sought privileged documents and because of Watson's "[f]ailure to pay the subpoena fee voids the subpoena." Watson, ¶¶ 77-82. Despite his obvious failure to comply

with V.R.C.P. 45(c), Watson nevertheless appealed Judge Toor's ruling to the Supreme Court, which affirmed the ruling, citing "[t]he plain meaning" of the Rule. <u>Id.</u>, ¶ 81.

It would be unjust to require Northshore to bear the cost of having to defend itself against claims brought in bad faith or that border on the frivolous. The fee-shifting provisions of 27A V.S.A. § 4-117(a) give this court the discretion to right that wrong. Moreover, it is irrelevant whether Northshore's board of directors approved the expenditure of those fees in advance, or not; if Northshore in fact incurred such fees and costs, it is entitled to be reimbursed for them. In addition, the court notes that Issues 7, 8 and 12 are factually and legally distinct from all the other claims that were asserted in this matter. Therefore, the court will award Northshore the attorney's fees and costs it reasonably incurred in defending itself against those three claims.

*Petition to Enforce Amended Mandate*

On May 15, 2018, Watson filed his "Petition to Enforce the Vermont Supreme Court's Amended Mandate." That "mandate" was issued on March 29, 2018. In his Petition, Watson askes the court to: order the removal of all dormers that have been installed at The Village of Northshore I and require the involved structures to be restored to their pre-expansion condition; require Northshore to seek rental income from those unit owners who installed dormers; order Northshore to amend its bylaws to correctly limit the association's access easement to individual units and to delete the 48-hour rule with respect to "Open Forums"; order the removal of all "illegally approved" skylights, expanded windows, and other expansions or additions made by unit owners to date; and to order "the recusal of current and future Board members, as well as ban the participation of past board members, who have a conflict of interest…." (Id., pp. 1-2). Northshore opposes Watson's requests.

For several reasons, the court must deny Watson's requests. First, although it goes without saying that this court would never hesitate to enforce the mandates of the Vermont Supreme Court, it bears noting that the Vermont Supreme Court did not expressly mandate that Northshore take any action, nor did it remand this matter to this court for further action. The Court did what Watson had asked of it, i.e., issue a declaratory judgment on those issues raised by Watson's amended complaint. The Court certainly did not mandate that Northshore or this court do any of the specific things requested in Watson's petition.

Secondly, some of the Watson's requests relate to matters that were not even discussed in the Vermont Supreme Court's opinion. For example, there is nothing in the Court's opinion declaring that homeowners at Northshore had installed or expanded "illegally approved" skylights or windows. Similarly, there is nothing in the Court's opinion suggesting that board members at Northshore should be recused for reasons of "conflict of interest," or otherwise. Although the Supreme Court did declare that Northshore had wrongfully approved dormer expansions, the Court said nothing in its opinion about any obligation of unit owners to remove their dormers or pay rent for them. Such requests go beyond anything the Court considered, let alone "mandated."

Thirdly, the only relief that Watson requested in this case was a declaration of rights. With the issuance of the Supreme Court's amended decision, Watson received all the relief that he had requested. What Watson now seeks are forms of relief (specific performance, mandatory injunction, etc.) that he never requested before now.

Fourthly, nearly all of Watson's requests would, if granted, affect other unit owners at Northshore, none of whom are parties to this case. Before this court can issue orders affecting

the rights of individual unit owners, those individuals must be given notice and an opportunity to be heard.

Lastly, Northshore and its residents are entitled to a reasonable opportunity to digest the Vermont Supreme Court's decision and take such actions as the Court's decision requires. Some of the things Watson requests, such as amending the bylaws to correctly limit the association's easement access and 48-hour rule, are clearly appropriate and can be accomplished reasonably promptly. If Northshore refuses to do that, of if it attempts to enforce easements or rules that the Supreme Court has declared unlawful, Watson can file an enforcement action with this court at that time. There is no evidence, however, that Northshore has either refused to amend the relevant bylaws or sought to enforce them in a manner forbidden by the Court's decision.

Many of the actions that Watson insists now be taken in response to the Court's decision are much less clearly necessary or appropriate than simply amending a bylaw. For example, there may or may not be other alternatives for addressing the Supreme Court's decision regarding dormer expansions than ordering them to be removed. While Watson insists that their removal is mandated by the Court's decision, Northshore points to language in the decision suggesting that the problem may be corrected by another amendment to the declarations. Because the issue is not yet ripe, this court takes no position on which if either contention is correct.

Except for the issue of attorney's fees, this matter is now closed. As the Vermont Supreme Court said in ¶ 88 of its decision, "because Watson only requested declaratory judgment and has not sought any other form of relief in the present action, he is not entitled to any specific performance or monetary damages unless and until he pursues an enforcement action in the trial court and the trial court so orders." If Watson believes that he is damaged or

harmed by any act or omission of Northshore committed in violation of the Supreme Court's rulings, he may file a separate enforcement action with this court at that time, and if he seeks any relief affecting other unit owners, he will need to name them in that enforcement action. *See* 12 V.S.A. § 4718 ("Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper….").

*Motion for Injunction*

Watson asks this court "for an injunction prohibiting Defendant from holding a vote to divide the Common Elements of the Village of Northshore I and convey Plaintiff's intertest in commonly-owned property in violation of the Amended and Restated Declaration of the Village at Northshore I" (Plaintiff's Motion for Injunction, at 1). Northshore opposes the motion.

At the heart of Watson's motion and Northshore's opposition is Watson's contention, on the one hand, that the Vermont Supreme Court's ruling requires all homeowners with dormers to remove the dormers and restore their units to their pre-dormer condition, and Northshore's contention, on the other hand, that the problem with the dormers can be fixed by an amendment to the association's declarations without violating Watson's rights. There is language in the Vermont Supreme Court's opinion arguably supporting both contentions.

In determining whether to issue an injunction, the court must consider the threat of irreparable harm to the movant, the potential of harm to the other parties, the likelihood of success on the merits, and the public interest. In re J.G., 160 Vt. 250, 255 n. 2 (1993).

Watson's motion was precipitated by a letter dated May 14, 2018, from Northshore's attorneys, stating that "the Association is preparing to solicit a vote of its members to approve the relocation of boundaries between the common elements and those units with dormer

expansions."[2]  The letter added that Watson "will receive notice of these proceedings and have the same opportunity to participate in them as all other unit owners" (Id.).  However, no such vote of the members has yet occurred or even been scheduled.  Therefore, Watson has not demonstrated that Northshore has taken or is about to take any action that causes him irreparable harm.

In essence, Watson's motion asks this court to issue an order enjoining Northshore and its 136-unit-owning members from holding a meeting for the purpose of considering a resolution which, if adopted, Northshore's board and attorneys believe would be consistent with the Supreme Court's decision yet would avoid having to remove all the dormers that have been installed to date.   The court declines to do that.  As noted earlier, both parties can point to language in the Supreme Court's decision supporting their respective views of what needs to be done next.  Watson can point to language suggesting that Northshore has no choice but to require the dismantling of the dormers, and Northshore can point to language suggesting that the problem can be solved by an amendment to its declarations.  This court takes no position on the merits of either contention, and, until the association takes action, or refuses to take action after a reasonable opportunity to do so, the issue will not be ripe for a decision by this court.  In the meantime, this court will not enjoin either party from considering and exploring their options in good faith.

Order

(1) Plaintiff's Motion for Fees and Expenses (Motion #39) is *denied.*

(2) Defendant's Motion and Supplemental Motion for Attorney's Fees and Litigation Expenses are *granted* as to Issues 7, 8 and 12 only, and are otherwise *denied.*  On or

---

[2] Watson's attorneys provided the court with a copy of the letter on July 9, 2018.

before August 8, 2018, Northshore shall file and serve any affidavits, time records, expense records, and argument supporting its request for fees and costs with respect to Issues 7, 8 and 12, and on or before August 24, 2018, Watson shall file any opposing affidavits and argument with respect to Northshore's request.

(3) Plaintiff's Petition to Enforce the Vermont Supreme Court's Amended Mandate is *denied*.

(4) Plaintiff's Motion for Injunction is *denied.*

SO ORDERED this 25th day of July, 2018.

_____
Robert A. Mello, Superior Judge