ALICE R. PHILLIPS *v.* HARRY M. CUTLER.

May Term, 1915.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed October 11, 1915.

*Springs—Aqueduct—Contract—Licensee—Appurtenances—Review—Remand for Further Proceedings.*

Where the owner of land containing a spring orally permits the owner of other premises to take water from the spring to his premises by means of an aqueduct laid to such spring, without consideration, and without express limitation of time, such taking is by virtue of a license irrevocable during the ordinary life of the aqueduct; and in such cases the licensee may repair the aqueduct to keep it usable, but not to the extent of renewing it; and an agreement to pay rent will not defeat the licensor's right to revoke after the licensee has had the benefit of his expenditure.

The right under an oral license to take water by an aqueduct from a spring on the land of another passes as appurtenant to the property benefited, and neither the death of the owner of the spring nor his conveyance of the land will work a revocation.

On review of a decree in equity dismissing a bill to enjoin defendants from preventing plaintiff from repairing an aqueduct that took water from a spring on defendant's land to plaintiff's premises, where it is not clear whether the bill was dismissed on the holding that there was no evidence of a license, which would have been erroneous, or because the pipe had become useless by natural deterioration, in which event plaintiff would have no right to repair it, the decree will be reversed, *pro forma*, and the cause remanded for a further hearing on the issues involved.

A license to take water by an aqueduct from a spring on the land of another must be found by the trier, and may be inferred from tacit consent or from acquiescence, and the fact that the owner of the spring paid for a stone, placed over it as a part of the repairs made by the owner of the aqueduct, and continued to receive an annual rental from an owner of the aqueduct who thereby took the water to his premises, after putting in a new pipe, while

strong evidence of a renewed license could not amount to a find-
ing to that effect in the face of an adverse decree.

APPEAL IN CHANCERY.  Heard on the pleadings and find-
ings of fact by the chancellor at the September Term, 1914,
Washington County, *Fish*, Chancellor.  Decree dismissing the
bill with costs.  The plaintiff appealed.  The opinion states the
case.

*H. C. Shurtleff* for the orator.

*Fred L. Laird* for the defendant.

MUNSON, C. J.  The house of the oratrix was owned by
Timothy P. Redfield from 1848 until his death in 1888.  It then
passed by devise to his widow, who occupied it until her death
in 1906.  It then passed to the oratrix by inheritance, and has
since been owned and occupied by her.  The spring in question
is on land formerly owned by J. C. Houghton; whose executrix
leased the premises to the defendant in 1903 with a right of
purchase, and conveyed them to him in 1912.  The original pipe
from the spring to the oratrix's house was in the ground when
Timothy P. Redfield purchased, and he and his successors in
title and occupancy have taken water from the spring through
pipes for more than sixty years.  It does not appear when, by
whom, or under what conditions, the first pipe was laid.  Timothy
P. Redfield was accustomed to enter on the land now owned by
the defendant for the purpose of repairing the pipe, and he and
his successors paid five dollars annually for the use of the water
until 1913.

In 1896 Mrs. Redfield caused the old pipe to be dug up and
a new one laid.  At this time a wooden box, which had been used
as a curb for the spring, was replaced by a tile, and a stone was
placed over this and covered with earth to the depth of six feet.
Mrs. Redfield paid for the digging and the pipe, and J. C.
Houghton, who was then the owner of the defendant's premises,
paid for the stone.  The water flowed with regularity, except
during dry times, until 1904.  It then only dripped at the Red-
field house, and in 1911 it stopped altogether.  The oratrix at-
tempted to repair the pipe, and was prevented by the de-
fendant and his servants.  On examination it was found that

the pipe leading to the oratrix's house had been severed outside the tile, and the hole in the tile plugged; that the strainer on the inside was detached and lying in the bottom of the spring; and that a large lead pipe had been inserted on the side opposite the other, such as would be suitable for use in ·pumping water from the spring. It did not appear who had done this, nor where the new pipe went. The defendant's residence is so located that the water would not flow to it unless pumped.

The findings of the chancellor contain the following: "There was no agreement or understanding between the said parties as to the laying of said new pipe, so far as appears." We construe this to mean that there was no evidence of an agreement in words. It clearly appears from the facts specifically found that there was some understanding regarding this. The fact that Mr. Houghton paid for the stone which was placed over the spring indicates that the work was being done with his knowledge and consent. The fact that there was no interruption in the payment of the annual charge was evidence tending to show an understanding that the previous arrangement was to continue. The case standing thus, the chancellor dismissed the bill.

It is well settled in this State that when the owner of premises containing a spring orally permits the owner of other premises to take water from the spring to his land by means of an aqueduct laid to such spring, without receiving consideration and without express limitation of time, the taking of the water under this permission is by virtue of a license not revocable during the ordinary life of the aqueduct. *Clark* v. *Glidden,* 60 Vt. 702, 15 Atl. 358; *Allen* v. *Fiske,* 42 Vt. 462; *Ainsworth* v. *Stone,* 73 Vt. 101, 50 Atl. 805. In these cases the licensee may repair the aqueduct as far as necessary to keep it usable, but not to the extent of renewing it. *Clark* v. *Glidden,* 60 Vt. 702, 711, 15 Atl. 358. An agreement for the payment of rent will not defeat the licensor's right to revoke after the licensee has had the benefit of his expenditure. *Clark* v. *Glidden.* Under the rule established in this State, the right to the water will pass as appurtenant to the property benefited, and neither the death of the owner of the spring nor his conveyance of the land will operate as a revocation. See *Ainsworth* v. *Stone,* 73 Vt. 101, 50 Atl. 805; *Clark* v. *Glidden.*

A license to take water may be inferred from tacit consent or acquiescence.    40 Cyc. 760.    *Hansen* v. *Farmers' Creamery,* 106 Iowa 167, 76 N. W. 652; *Occum Co.* v. *Sprague Mfg. Co.,* 34 Conn. 529.    But the inference must be drawn by the trier; for circumstances of this nature are but evidence of a license, and not the license itself.    *Johnson* v. *Lewis,* 13 Conn. 303, 33 Am. Dec. 405.    It is doubtless true that facts may be reported sufficiently conclusive to amount to the finding of a license; but this cannot be said of the facts presented here.    The facts that Houghton paid for the stone and that he and some successor, presumably his executrix, continued to receive the annual payment, are rather strong evidence of a renewed license; but they certainly cannot be given the effect of a finding in the face of an adverse decree.

If the bill was dismissed on the ground that there was no evidence tending to show a license, it was error.    But the dismissal may have been on the ground that the life of the new aqueduct had ceased.    The oratrix's attempt to make repairs was defeated by the action of the defendant, and it does not appear what, if anything, has since been done or ascertained regarding the condition of the pipe.    The conditions found at the spring fully accounted for the complete stoppage of the water. But those conditions do not account for the great reduction of the flow at an earlier date.    This reduction might have been taken as evidence that the pipe had become useless by a natural deterioration, or accounted for on the theory that there was a partial stoppage in the pipe.    It was for the chancellor to determine this on all the evidence submitted.    But if the dismissal was on the ground that there was no evidence tending to establish a license, this question of fact regarding the pipe was not reached.

We are not content to render a final decree on the case as presented, and will remand for a further hearing of the issues involved.

*Decree reversed pro forma, and cause remanded for further hearing.*