# Chris F. deNeergaard et al v. Mildred L. Dillingham

[187 A.2d 494]

November Term, 1962

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed January 3, 1963

*Norbert J. Towne* for the plaintiffs.

*Richard E. Davis* for the defendant.

**Barney, J.** The plaintiffs claim that three particular springs are enclosed by the boundaries of a certain parcel of land to which they have title. The most northerly of these springs was connected to the domestic water supply of the plaintiffs when they acquired the property in 1950. The plaintiffs' chain of title ultimately goes back to the conveyance of this same parcel by the defendant and her husband, then living, to one Clarence Smith. The land adjoining to the south and west is still owned by the defendant. She says that the parcel in question does not include any of these springs because they are all southerly of the true south line of the parcel. Since the plaintiffs have owned the parcel they have had both of the other two springs tied into their domestic water supply. Both of these springs are southerly of the first spring which formed the water supply at the time of purchase.

Both sides agree that there are mistakes in the description of the parcel involved in the deed of conveyance. These errors make it impossible to translate the calls in the deed into bounds setting out a parcel of land on the ground. In this connection the plaintiffs sought reformation of the deed. The description reads as follows:

> Beginning at a point in the westerly side of the highway leading from Northfield South Village, so called, to Williamstown said point being two-hundred thirty-four feet northerly from our southeast corner and nearly opposite the house of said grantee and also opposite a tamarack tree now standing on the westerly side of the highway opposite said grantee's house, thence running

South 23 degrees 45 minutes East two hundred thirty-four feet in the easterly line of the highway to our southeast corner, thence south thirty-eight degrees West along the southerly line of our land five hundred twenty-eight feet to a stake, thence North twenty-three degrees forty-five minutes West two-hundred forty feet to a stake, thence easterly five-hundred twenty-eight feet to the place of beginning. Being a part of our home place where we now live.

The chancellor reformed the deed in a manner which left all three of the springs in question outside the bounds of the parcel described in the deed. In addition, he found a right in the plaintiffs based on adverse possession, to take water from that most northerly spring to which plaintiffs' domestic water system was already connected. The other two springs were declared to be the property of the defendant and required to be disconnected from plaintiffs' water supply. The evidence revealed that the highway in the deed really runs east and west. The trial court, therefore, without objection from the parties, corrected the directions in the description to conform to the proper orientation when it made the reformation. In this view of the property, the land lies on the southerly side of the highway and the side farthest from the road and parallel to it is the south boundary. This corrected orientation is used throughout this opinion unless otherwise noted. The reformed description of the chancellor reads as follows:

Beginning at a point in the southerly line of the road from Northfield to Williamstown which point was established (Defendant's Exhibit "F") by one R. C. Hayden, the then Town Manager of Northfield, in June of 1950, thence along the southerly line of said highway a distance of two hundred thirty-four feet; thence South thirty-eight degrees West a distance of five hundred twenty-eight feet to a point; thence in a line parallel with the southerly line of the highway a distance of two hundred forty feet; thence in a general northerly direction and a straight line to the place of beginning.

Generally speaking, the plaintiffs assert that certain of the findings, including the new description, are not supported by the evidence and, without them, the judgment order is without justifica-

tion. It is up to the plaintiffs to demonstrate this claim on appeal, since this Court must affirm the findings if there is any credible evidence to support them, and must construe those findings so as to support the judgment, if possible. *Graham* v. *Slayton,* 122 Vt. 425, 428, 175 A.2d 809; *Bresette* v. *Knapp,* 121 Vt. 376, 381, 159 A.2d 329.

An examination of the description in the deed reveals some of the mistakes. Others become evident when following the calls as to distance and direction is attempted. This is all borne out by testimony in the case. Starting with the calls for the first side, a literal compliance puts the beginning and ending on one side of the highway, with the line between on the opposite side of the road. The other three sides appear properly described, but the testimony points out other problems. To begin at the beginning again, the first call runs that boundary on the line of the edge of the highway, but gives a bearing which varies by about five degrees from the highway line. The highway direction has not altered since the deeds in this chain of title were given. The given bearing turns the boundary away from the highway and leaves a useless, wedge-shaped sliver of land a few feet in width between the parcel and the highway. An identical compass bearing is given for the back or southerly line, indicating that those two sides are parallel. Moving around the bounds, no difficulty is encountered until the length of the last bound is laid out. The distance to the point of beginning given in the description overruns the actual distance by a little over two feet.

Turning to the reformed description ordered by the chancellor, it can be seen that he confined his corrections to these manifest errors. The defendant accepts the amendments to the description but the plaintiffs do not. Their attack is two-pronged. One challenges the particular changes made by the chancellor as unsupported by the evidence. The other claims the findings and order are unsound because reformation was not decreed in accordance with the intent of the parties at the time the deed was drawn.

If the plaintiffs can be sustained in this last contention a remand will be required, so we will deal with this issue first. In asking that the deed be redrawn in whatever particular is necessary to put the springs in question within the bounds of the parcel, the plaintiffs are asking for reformation beyond the intent of the parties as re-

vealed by the deed itself. The deeds in the chain of title contain no mention of springs or spring rights, nor does there appear any statement that the property was purchased for any particular purpose, such as to acquire springs. The difficulties in the description in the deed are not associated in any way with any expressions or discernable intention to convey any springs. Admittedly, it is the intention of the parties discoverable from the language of the deed which governs, in the first instance. *Hopkins* v. *Fleming,* 112 Vt. 389, 391, 26 A.2d 96, 142 A.L.R. 463.

The evidence said to justify reformation here, as the plaintiffs would have it, derives from sources outside the language of the instrument. In such a case, to obtain reformation on the basis that the deed does not represent the actual conveyance intended by the parties, the plaintiffs have the burden of establishing that there existed, previously to the deed, a valid agreement representing a standard to which the erroneous writing can be reformed, so as to express the true transaction between the parties. *Fife & Child* v. *Cate,* 84 Vt. 45, 47, 77 Atl. 947. To fulfill this burden the plaintiffs are required to produce proof sufficient to establish their claim beyond a reasonable doubt. *Pennock* v. *Goodrich,* 102 Vt. 68, 72, 146 Atl. 1. Once it has been established that there was an intended agreement that the formal writing mistakenly failed to express, equity will deal generously in the correction of mistakes. *Dutton* v. *Davis,* 103 Vt. 450, 452, 156 Atl. 531. But the requisite measure of proof must be met as to the standard to which the instrument must be reformed, before equitable intervention is permissible. *Ward* v. *Lyman,* 108 Vt. 464, 467, 188 Atl. 892.

The findings in this case reveal that the plaintiffs failed to sustain their burden. It was up to them to procure from the chancellor, as trier of the facts, affirmative findings establishing that it was the intent of the parties to the original conveyance to transfer a parcel of land laid out for the purpose of giving title to those springs to the plaintiffs' predecessors in title. Unless the evidence was such as to require a finding as a matter of law that plaintiffs' version of the transaction was a standard to which the deed should be reformed, we must accept the chancellor's view as to the weight of the testimony. *Ward* v. *Lyman, supra,* 108 Vt. 464, 468, 188 Atl. 892.

The plaintiffs say that such a result would be compelled if the chancellor had carried out his duty to ascertain the intent of the parties

and had considered the physical evidence of the location of the boundaries on the ground. This is all reinforced, they say, by the rule that uncertainties in a deed should be construed against the grantor, under the doctrine of *Manchester Marble Co.* v. *Rutland Ry. Co.,* 100 Vt. 232, 242, 136 Atl. 394, 51 A.L.R. 628.

The plaintiffs' claim overlooks the fact that the existence of uncertainties of description in a deed is not necessarily evidence that the deed fails to express the intention of the parties. The rule that the instrument will be construed most favorably to the grantee is limited to cases where the words in the deed will bear either of two or more interpretations equally well. *Bove's Exr.* v. *Bove,* 116 Vt. 76, 91, 70 A.2d 562. To help the plaintiffs' position one of those available interpretations of the deed must bear out their claim as to the parties' intention. This it does not do.

The physical evidence referred to by the plaintiffs as to the location of boundaries on the ground is not unequivocal. The chancellor was free to give it such credit as he felt it deserved. Even giving the plaintiffs' case all the evidentiary force claimed for it, we are not disposed to say that, as a matter of law, it satisfied the requirement of establishing beyond a reasonable doubt that the parties intended to execute an instrument that conveyed the three springs in question. Even taking into account the testimony of Clarence Smith, the original grantee of the parcel, the evidence did not all point in one direction. With the burden on the plaintiffs placed so high by law, the chancellor could reasonably conclude that the plaintiffs had not demonstrated that there existed an actual agreement to convey these springs which, through mistake, was not accurately committed to written form. We cannot here dispute his conclusions.

It seems clear that the plaintiffs, both in urging their claim as to the form to which the deed should be reformed and in attacking the chancellor's version, are attempting to give rules of construction the status of positive rules of law. To do so is to give them more force than they are entitled to. *Latchis* v. *John,* 117 Vt. 110, 112, 85 A.2d 575, 32 A.L.R.2d 1203. The chancellor was under a duty to construe the deed in question so as to give effect to every part and form from the parts a harmonious whole, if possible. *Aiken* v. *Clark,* 117 Vt. 391, 393, 92 A.2d 620. The chancellor's findings reveal

that he was able to derive his conclusions as to the intentions of the parties to the deed and make the corrections from the language of the instrument itself. This is the preferred approach. *Davidson* v. *Vaughn,* 114 Vt. 243, 246, 44 A.2d 144. It also supports the chancellor's rejection of the plaintiffs' theory of reformation which depends on an intent not expressed in the deed itself. *Latchis* v. *John, supra,* 117 Vt. 110, 112, 85 A.2d 575, 32 A.L.R.2d 1203.

In connection with the particular description found by the chancellor to represent a proper reformation of the deed, the plaintiffs raise the claim that evidentiary support is lacking. Starting with the point of beginning designated by the chancellor, we find that there was evidence in the case that the location of the corner of this parcel had been located and marked by the Northfield town manager when some road work was being done there. The chancellor then used the edge of the highway as a monument determining in the northerly boundary of the parcel. The language of the original deed puts the property line in the edge of the highway. It thus would prevail over the designation of the course by compass direction. *Neill* v. *Ward,* 103 Vt. 117, 147, 153 Atl. 219. Making the southerly line parallel to the highway carried out the parallel nature of these two boundaries expressed in the original deed in a manner that favored the grantee over the grantor. If the compass bearing of the south line had been retained, the westerly side would have been shortened and the size of the parcel diminished. The difficulty with the length of the westerly boundary was averted by omitting the measurement figures and simply bringing the westerly line down from the southwesterly corner to the point of beginning. In no particular is there evidence lacking to support the chancellor's reformation.

The plaintiffs make one further claim. The findings mention that the most northerly spring was connected to the second of the three springs in question. This connection is stated to be by a rusted iron pipe through which no water had flowed from the time the Petersons, the plaintiffs' predecessors in title, had acquired the property in 1942 until the plaintiffs had repairs made and replaced the pipe in 1953. The plaintiffs argue that these findings establish the existence of a license from the Dillinghams to take water from the second spring. A license to take water from a spring can come into

being only by the consent of the owner of the land where the spring is, but that consent may be inferred from circumstances indicating tacit consent or acquiescence. But these circumstances are merely evidence of a license, not the license itself. The inference is for the trier to make from the evidence, and, in this case, he did not make it. *Phillips* v. *Cutler,* 89 Vt. 233, 236, 95 Atl. 487.

Clarence Smith, who originally was sold the parcel by the defendant and her husband in 1928, testified that he had, during his ownership, piped together two springs. However, on the testimony in the case, the identity of the springs in dispute and those that Clarence Smith testified about was open to question. The evidence did not necessarily disclose either a license or a prescriptive right ripening by use of this spring. The burden was on the plaintiffs to establish the affirmative of these propositions, and the risk of non-persuasion as to the facts was theirs. The chancellor was not satisfied that they had evidenced their right to that spring, and this Court cannot say, as a matter of law, that he was in error.

*Decree affirmed.*