NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 76

No. 24-AP-087

| | |
|---|---|
| Sarah Massucco | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windham Unit, |
| | Civil Division |
| | |
| James M. Kolodziej and Barbara H. Kolodziej, et al. | October Term, 2024 |

Michael R. Kainen, J.

Joseph Galanes of Phillips, Dunn Shriver & Carroll, P.C., Brattleboro, for Plaintiff-Appellee.

Stephen S. Ankuda of Parker & Ankuda, P.C., Springfield, for Defendants-Appellants.

PRESENT: Reiber, C.J., Eaton, Cohen and Waples, JJ., and Teachout, Supr. J. (Ret.), Specially Assigned

¶ 1. **WAPLES, J.** Defendants James and Barbara Kolodziej discovered that a parcel of land near their property was seemingly omitted from plaintiff Sarah Massucco's deed. They arranged for the heirs of a previous owner of the land to deed that parcel to them. Defendants neither talked to plaintiff—who they saw use the parcel—nor confirmed that the heirs owned the parcel. After recording their own deed, defendants informed plaintiff that they owned the parcel and asked her to remove her belongings. Plaintiff sued. The trial court granted plaintiff's claim for deed reformation on summary judgment and concluded Mr. Kolodziej slandered plaintiff's title after a bench trial. Defendants appeal and we affirm.

¶ 2.    The following facts are undisputed. The Adams family owned and lived on a tract of land in Rockingham. In December 1985, the Adamses obtained a state permit authorizing a subdivision of their approximately eleven-acre parcel into two parcels. The subdivision plan approved by the town zoning administrator reflected that the boundary between the two lots followed the line of a ditch.

¶ 3.    The Adamses sold the larger, northerly parcel to the Wilson family in January 1986. The deed conveyed the whole subdivided parcel and described a southern property boundary running along a "line generally marked by a drainage ditch."

¶ 4.    In October 1987, the Adamses conveyed the smaller, southerly parcel to George Leisey, plaintiff's former husband. Plaintiff later acquired all rights in the Leisey property. The Leisey deed, however, did not describe the remainder of the split Adams property. Instead, it purported to convey a lot with a northern property line bounded by an extension of the neighboring parcel boundary, not by the drainage ditch. The deed facially conveyed a parcel of land with a northern boundary running "along lands retained by the Grantors."

¶ 5.    The Leisey deed thus created a small slice of land between the Wilson property, bounded by the ditch, and the property facially deeded to Mr. Leisey. This case arises from the apparent creation, by deed, of that sliver of land ("the disputed parcel").

¶ 6.    Defendants own property on the other side of the road from the disputed parcel. In 2011, defendants sought out the heirs of the Adamses ("Adams heirs") because they were interested in acquiring the disputed parcel. Mr. Kolodziej researched the property prior to contacting the Adams heirs. He showed one heir the nearby deeds to demonstrate that the deeds did not include the disputed parcel. None of the Adams heirs told Mr. Kolodziej that they still owned the parcel. Even at the time of the transfer, the signatory for the Adams heirs testified that he did not believe he owned the land. Nevertheless, the heirs by warranty deed purported to convey the disputed parcel to defendants. The agreement between the Adams heirs and defendants reflects

2

no purchase price, but instead recites two conditions: (1) that the buyer will pay the legal expenses for the transfer, and (2) that the seller will reimburse buyer for legal costs incurred if the seller backs out of the deal. A transfer tax return filed after the sale reflects a total price of "$0.00" paid for the parcel. After the sale, the town clerk indicated on the tax return that the parcel was not on the town grand list.

¶ 7. In 2017, plaintiff sued defendants and the Adams heirs. Plaintiff sought reformation of the deeds in her line of title, going back to the transfer from the Adamses to Mr. Leisey. She asserted that the original transfer from the Adamses to Mr. Leisey intended a transfer of land encompassing the disputed parcel. She further sought damages for the Adams heirs' alleged breach of the covenant of title and damages for slander of title.[1]

¶ 8. In 2020, the trial court granted plaintiff's motion for partial summary judgment, reforming the deeds in her line of title to include the disputed parcel. The parties proceeded to trial on plaintiff's claims for breach of covenant of title and for slander of title. After a bench trial in 2022, the court ruled for defendants and the Adams heirs on the breach-of-covenant-of-title claim. But the court ruled for plaintiff on her slander-of-title claim, concluding that Mr. Kolodziej alone slandered her title.

¶ 9. Defendants now appeal, arguing that the trial court erred in: (1) granting summary judgment on the reformation of the deeds; (2) finding that Mr. Kolodziej slandered plaintiff's title; and (3) awarding attorney's fees to plaintiff for her slander-of-title claim. We take each contention in turn.

## I. Deed Reformation

¶ 10. "We review the trial court's grant of summary judgment de novo." Mansfield v. Heilmann, Ekman, Cooley & Gagnon, Inc., 2023 VT 47, ¶ 15, __Vt. __, 308 A.3d 533. On appeal

---

[1] Plaintiff also sought other relief not relevant here.

from a grant of summary judgment, we "review the record evidence in the light most favorable to the nonmoving party." Morisseau v. Hannaford Bros., 2016 VT 17, ¶ 2, 201 Vt. 313, 141 A.3d 745. Summary judgment is only appropriate "where the material undisputed facts show that the moving party is entitled to judgment as a matter of law." Id. ¶ 12.

¶ 11. When evidence creates an issue of material fact, summary judgment is inappropriate, regardless of the "view the court may take of the relative weight of that evidence." Vt. Env't Bd. v. Chickering, 155 Vt. 308, 319, 583 A.2d 607, 613-14 (1990). To determine whether a dispute of material fact exists, we "accept as true allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material." White v. Quechee Lakes Landowners' Ass'n, 170 Vt. 25, 28, 742 A.2d 734, 736 (1999). However, the party opposing summary judgment " 'must set forth specific facts showing that there is a genuine issue for trial.' " Id. (quoting V.R.C.P. 56(e)).

¶ 12. To reform her deed, plaintiff must demonstrate, beyond a reasonable doubt, that the deed fails to express the real agreement between seller and buyer due to a mutual mistake in reducing the agreement to writing. Cassani v. Hale, 2010 VT 8, ¶ 17, 187 Vt. 336, 993 A.2d 422. "Mutual mistake is shown if the evidence establishes that the seller intended to sell and the buyer intended to purchase a different piece of land than that described in the deed." LaRock v. Hill, 131 Vt. 528, 530, 310 A.2d 124, 126 (1973). The court may reform a deed to what "the deed and extrinsic evidence indicate [the parties] must have intended." Cassani, 2010 VT 8, ¶ 19. "Intent is rarely proved by direct evidence; it must be inferred from a person's acts and proved by circumstantial evidence." State v. Langdell, 2009 VT 125, ¶ 9, 187 Vt. 576, 989 A.2d 556 (mem.) (quotation omitted).

¶ 13. The trial court granted summary judgment to plaintiff on her claim for deed reformation. Defendants contend that the court erred in granting summary judgment in several ways.

4

¶ 14.    First, defendants contend that the language of the Leisey deed, which states that the Leisey property was bounded on the north "along lands retained by the Grantors," is unambiguous and thus a claim for reformation of that deed requires a trial on the merits. This contention misapprehends the nature of summary judgment for reformation of a deed. Plaintiff does not dispute that the Leisey deed facially omitted the disputed parcel. Her claim is that the deed does not reflect the true agreement between the Adamses and Mr. Leisey. The undisputed text of the deed alone does not bar a grant of summary judgment on a reformation claim.

¶ 15.    Second, defendants argue that the trial court erred because plaintiff's statement of undisputed material facts was brief and conclusory. The trial court found that "while terse," her statement "contains specific citations to the record and satisfies V.R.C.P. 56(c)." We agree. While plaintiff's statement of material facts was short, she provided citations to the record sufficient to support her assertions. See V.R.C.P. 56(c)(1) (requiring statement of undisputed material fact to be supported with "specific citations to particular parts of materials in the record").

¶ 16.    Third, defendants argue that the court erred in granting summary judgment because Mr. Leisey's testimony about the location of the boundary of the property was conflicting and inaccurate. At his deposition, Mr. Leisey stated that he "didn't have anything that was, you know, firm in terms of where the boundaries where, but it was kind of obvious because [a neighbor] had been taking care of his acreage behind it." He testified that the boundary of his parcel was the berm on the north side of the ditch. He also agreed that a survey of the parcel reflects his recollection of the land that he purchased, including the property in the deed and the disputed parcel. That survey shows a property line that only crosses to the north side of the ditch at its most northeasterly point.

¶ 17.    Defendants contend that these discrepancies mean plaintiff cannot adequately demonstrate an agreement between Mr. Leisey and the Adamses that would allow for reformation of the Leisey deed. See deNeergaard v. Dillingham, 123 Vt. 327, 331, 187 A.2d 494, 497 (1963)

5

(holding plaintiff seeking deed reformation must prove intended agreement beyond reasonable doubt). The court found that "these minor discrepancies" were not "material given [Mr. Leisey's] testimony that his property line ran along the drainage ditch, which is supported by the survey."

¶ 18. We must take as true "allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material." White, 170 Vt. at 28, 742 A.2d at 736. However, the party opposing summary judgment " 'must set forth specific facts showing that there is a genuine issue for trial.' " Id. (quoting V.R.C.P. 56(e)). The facts set forth by defendants do not create a genuine dispute of fact for trial. The unrefuted deposition testimony demonstrated that the Adamses intended to convey their whole remaining parcel to Mr. Leisey, even if Mr. Leisey was hazy on the specific details of the parcel's boundary.

¶ 19. Finally, defendants assert that the court erred by depriving itself of an opportunity to weigh the credibility of the one living party to the Leisey deed transaction, Mr. Leisey himself. In her statement of undisputed material facts, plaintiff asserted that "all parties to [the Leisey deed transaction] intended that the transfer would include" the disputed parcel. She cited deposition testimony of Mr. Leisey and one of the Adams heirs in addition to various exhibits attached to her motion.[2] Mr. Leisey's deposition testimony describes him being shown around the property by the Adamses three times before he purchased it, including walking the boundary each time. He explained that the property he was purchasing from the Adamses included apple trees, a bus turnaround, and the ditch, all located on the disputed parcel. He also testified that he never saw

---

[2] In opposing summary judgement below, defendants did not point to any evidence disputing plaintiff's assertion that "all parties to that transaction intended that the transfer would include" the disputed parcel. Instead, they contended that her supporting evidence was inadmissible under the parol evidence rule, rules barring hearsay, the Dead Man's Statute, and the rules of deed construction which prohibit extrinsic evidence absent ambiguity within the deed. The court disagreed and found the evidence admissible. On appeal, defendants mention this argument but do not appear to raise it for our review. We accordingly decline to address this possible claim of error. See In re Musto Wastewater Sys., 2014 VT 103, ¶ 5 n.2, 197 Vt. 514, 106 A.3d 929 (declining to address issues raised but not briefed).

anyone in the vicinity of the disputed parcel without his permission. The signatory for the Adams heirs testified that he inherited nothing from either parent, that neither of his parents mentioned keeping property after they sold their house to Mr. Leisey, and that he did not believe that his parents understood that they kept any of the property. He also testified that he did not think he was selling any property to defendants because he did not own it.

¶ 20. On appeal, defendants contend that granting summary judgment deprived the factfinder of the opportunity to "weigh the capacity and credibility" of Mr. Leisey in court. Courts should be cautious in granting summary judgment where "intent is a dispositive issue." Stamp Tech, Inc. ex rel. Blair v. Ludall/Thermal Acoustical, Inc., 2009 VT 91, ¶ 31, 186 Vt. 369, 987 A.2d 292. For cases in which a determination of "state of mind" is essential, the factfinder "normally should be given the opportunity to make a determination of the credibility of witnesses, and the demeanor of the witness whose state of mind is at issue." Boulton v. CLD Consulting Eng'rs, Inc., 2003 VT 72, ¶ 27, 175 Vt. 413, 834 A.2d 37 (quotation omitted).

¶ 21. Despite the need for caution in granting summary judgment where intent is a dispositive issue, the court did not err here. See Stamp Tech, 2009 VT 91, ¶ 31. Evidence of both the Adamses' and Mr. Leisey's intent was unrefuted. Though defendants assert that the court needed to be able to weigh Mr. Leisey's credibility in the courtroom because he explained in his deposition that he had a stroke and took mood-stabilizing medication, they do not point to any evidence that would tend to contradict his testimony about the intent of the parties to the Leisey deed transaction. Though courts should be cautious in granting summary judgment where intent is a dispositive issue, that caution does not require denying summary judgment when there is no dispute of material fact and when those undisputed facts establish the parties' intent as a matter of law.

¶ 22. In their reply brief, defendants assert for the first time that the map attached to the zoning permit certificate of compliance filed by the Adamses in 1985 to subdivide their property

7

demonstrates an intent to create a third parcel. They say that the "depiction" of the boundary line as stated in the Leisey deed on the map "serves no purpose other than to suggest that the [Adamses] contemplated . . . a subsequent conveyance of the disputed parcel." This argument was neither raised below nor included in defendants' opening brief. "We need not consider an argument raised for the first time in a reply brief." Robertson v. Mylan Lab'ys, Inc., 2004 VT 15, ¶ 2 n.2, 176 Vt. 356, 848 A.2d 310.

¶ 23. Even if we considered their argument, it is unpersuasive. Though on summary judgment, the "nonmoving party receives the benefit of all reasonable doubts and inferences," any inference must be reasonable. Gates v. Mack Molding Co., 2022 VT 24, ¶¶ 13, 22, 216 Vt. 379, 279 A.3d 656 (quotation omitted). The map itself shows the creation of only two parcels. The map was attached to the zoning permit certificate of compliance, which also showed one subdivision of the whole Adams property into two parcels. The inference that the map creates a dispute of material fact over the Adamses' intent is not reasonable.

¶ 24. Defendants do not contest the court's holding that they were not bona fide purchasers of the disputed parcel and thus not entitled to the protection of the recording statutes. Without any disputed material facts presented, the trial court appropriately granted summary judgment on plaintiff's claim for reformation of the Leisey deed and the deeds in her line of title.

## II. Slander of Title

¶ 25. After a bench trial in May 2022, the court concluded that Mr. Kolodziej slandered plaintiff's title. The court made findings of fact and legal conclusions in reliance on those facts.

¶ 26. To prove slander of title, plaintiff must show that: (1) she has a "transferrable ownership interest capable of disparagement," (2) defendants published a false statement concerning plaintiff's title; (3) defendants acted with malice, and (4) the statement caused special damages. Sullivan v. Stear, 2011 VT 37, ¶¶ 8, 11, 189 Vt. 442, 23 A.3d 663. " 'The essence of the tort is the publication of an assertion that is derogatory to the plaintiff's title to property in an

8

effort to prevent others from dealing with the plaintiff.' " Id. ¶ 8 (quoting Wharton v. Tri–State Drilling & Boring, 2003 VT 19, ¶ 14, 175 Vt. 494, 824 A.2d 531 (mem.)).

¶ 27. We will uphold the court's conclusions regarding "a mixed question of law and fact if the court applied the correct legal standard and its conclusions are supported by its factual findings." Adams v. Adams, 2005 VT 4, ¶ 10, 177 Vt. 448, 869 A.2d 124. To determine whether the court's conclusion that Mr. Kolodziej slandered plaintiff's title is supported by its factual findings, we take each element of the slander-of-title claim in turn.

### A. Transferrable Ownership Interest Capable of Disparagement

¶ 28. Defendants assert that plaintiff does not have a transferrable ownership interest in the disputed parcel until the court's grant of summary judgment and reformation of the deeds in her chain of title becomes final. They contend that the purported conveyance from the Adams heirs to themselves in 2011 did not impair title to any property owned by plaintiff at the time. The trial court rejected this argument without explanation or citation. It appears that the court assumed that plaintiff's interest in the disputed parcel could sustain a claim for slander of title.

i.

¶ 29. We must first consider whether plaintiff had title to the disputed parcel in 2011. The question of whether a reformed deed takes effect from the time of its original execution or only takes effect at the time of reformation appears to be a matter of first impression in Vermont. Plaintiff points us to Burlington Savings Bank v. Rafoul, to argue that reformation of an instrument requires that the later-reformed instrument takes effect at the time of its original execution. 124 Vt. 427, 433-34, 209 A.2d 738, 742 (1965).

¶ 30. In Rafoul, a bank held a mortgage on a business owner's property and required that he maintain fire insurance. The business owner sought out that insurance, but mistakenly asked the insurance companies to put the insurance contract in the name of another entity he owned. After a fire damaged the building, the defendant insurance companies declined to pay. The bank

9

sought reformation of the contract because the business owner, not the other entity, was the intended beneficiary of the insurance. The trial court reformed the contracts and "ordered payment" for the loss from the fire. Id. at 428, 209 A.2d at 739. We affirmed and concluded that "[t]he policies issued by defendants were valid and in full force at the time the loss occurred." Id. at 433, 209 A.2d at 742.

¶ 31. Various treatises and other courts to consider the matter have found that reformation "relates back to, and takes effect from, the date of the conveyance." 14 Powell on Real Property § 81A.07 (2024) (emphasis omitted); see also 66 Am. Jur. 2d Reformation of Instruments § 8 (noting reformed instrument "takes effect from the time of the instrument to be reformed" except when reformation would "prejudice a person or entity that had acquired legal rights before the reformation occurs"). This makes sense. Because the purpose of a claim for deed reformation is to allow for recognition of the parties' original intent, the reformed deed corrects the deed to what it should have stated all along. See 66 Am. Jur. 2d Reformation of Instruments § 8. However, courts have also found that retrospective application of a deed reformation may be withheld when inequitable, such as when it would prejudice a third party who lacked notice of the mistake or who was a bona fide purchaser. Id. "Except as to bona fide purchasers without notice and those standing in similar relations," a reformed instrument takes effect from the time of original execution of the instrument. Gurske v. Strate, 87 N.W.2d 703, 705 (Neb. 1958). We see no reason to depart from this rule.

¶ 32. Defendants concede that they were not bona fide purchasers for value. They were also not third parties who lacked constructive notice of mistake in the deed. This Court has concluded that a person has constructive notice of ownership of a contested parcel under similar circumstances. In Griswold v. Smith, we concluded that the defendant who claimed title to a disputed lot of land had "constructive notice" that the plaintiff owned the parcel, despite the lack of a recorded deed, because the prior owner had "for many years ceased to exercise any claim of

10

title to the land" and the plaintiff had "all along had the visible and apparent ownership." 10 Vt. 452, 456 (1838).

¶ 33. Just as in <u>Griswold</u>, defendants here had constructive notice that plaintiff owned the parcel for the same reasons. The prior owners, the Adamses, had for many years "ceased to exercise any claim of title to the land" and plaintiff had visibly and apparently used the disputed parcel. <u>Id</u>. Uncontested testimony by plaintiff at trial indicated she had fruit trees and gardens on the disputed parcel, she had a fire pit there, and she had a basketball hoop by the road. Defendants knew about plaintiff's use of the parcel because after they recorded their deed, they asked plaintiff's family to remove property remaining on the land. Because defendants were neither bona fide purchasers nor the sort of third party who lacked constructive notice of the possibility of mistake in the Leisey deed, the reformed deed relates back to the original Leisey deed.

ii.

¶ 34. Defendants argue that plaintiff's interest in the disputed parcel cannot serve as the "transferrable ownership interest capable of disparagement" necessary to sustain a slander-of-title claim. See <u>Sullivan</u>, 2011 VT 37, ¶ 11. This also appears to be an issue of first impression in Vermont.

¶ 35. To guide our analysis, we look to the availability of a slander-of-title claim after the establishment of title by adverse possession. Adverse possession is a useful analogy here. "[A]n adverse possession claim is really one for recognition of title and enforcement of the rights that accompany title." <u>Roy v. Woodstock Cmty. Tr., Inc.</u>, 2013 VT 100A, ¶ 35, 195 Vt. 427, 94 A.3d 530. The same is true of an action for reformation of a deed. The claim is for recognition of title that already exists. As we explained above, the landowners in plaintiff's line of title possessed title to the disputed parcel from the moment that the Adamses provided Mr. Leisey his erroneous deed. Though the land records did not reflect plaintiff's ownership of the disputed parcel, she nonetheless had title to the land.

11

¶ 36.   Defendants point us to cases showing that title acquired by adverse possession cannot be slandered until after a court establishes such title. Lopez v. Adams, 867 P.2d 427, 429 (N.M. Ct. App. 1993); Howard v. Schaniel, 169 Cal. Rptr. 678, 682 (Cal. Ct. App. 1980). Plaintiff points us to a case from Maine that acknowledges the split in authority but concludes that title by adverse possession "is a sufficient interest in property for a claimant to maintain an action for slander of title." Colquhoun v. Webber, 684 A.2d 405, 409-10 (Me. 1996).

¶ 37.   As the Maine Supreme Judicial Court recognized in Colquhoun, there is a split among the states as to whether land acquired through adverse possession can support a slander-of-title claim. Id. States' differing approaches can be explained by how the states treat adverse possessors. See B. Lester, An Attempt to Quiet the Controversy: The Case for Automatically Equipping an Adverse Possessor with a Slander of Title Action, 37 New Eng. L. Rev. 249, 258-59 (2003). For example, in New Mexico and California, adverse possessors lack title to the land they have possessed until judicial confirmation of that possession. Lopez, 867 P.2d at 430 (explaining "adverse possession is not established until the actual decree"); Howard, 169 Cal. Rptr. at 682 (explaining "title acquired by adverse possession is not a marketable title until the title is established by judicial proceedings against the record owner").

¶ 38.   By contrast, in Maine, an adverse possessor has "perfect [] title" even without a "judgment at law" because satisfaction of the requirements to adversely possess property "is as effectual for that purpose as a deed duly executed." Colquhoun, 684 A.2d at 410 (quoting Inhabitants of School-Dist. No. 4, in Winthrop v. Benson, 31 Me. 381, 384-85 (1850)). The same is true in Vermont. Here, an adverse possessor acquires title "as perfect as acquisition by grant" after the prescriptive period has run. Roy, 2013 VT 100A, ¶ 35 (quotation omitted). However, that title is not recorded by deed or land record until the adverse possession is confirmed by court order. That sort of "hidden title" that a possessor has after the adverse-possession period has run is akin to a landowner's unrecorded title before a deed has been reformed by court order.

¶ 39.    In Colquhoun, the Maine Supreme Judicial Court looked to the Restatement (Second) of Torts, which provides that a legally protected interest in land "may be disparaged if the interest is transferable. . . . It may be protected either by legal or equitable proceedings and may be vested or inchoate. It may be . . . [an] equitable interest." Restatement (Second) of Torts § 624 cmt. c (1977). Because in Maine an adverse possessor has good title after having met the requirements for adverse possession, that title can sustain a slander-of-title claim even before judicial confirmation of the title. Colquhoun, 684 A.2d at 410.

¶ 40.    We hold the same here. Because plaintiff had good title to the disputed parcel, she had a "transferrable ownership interest capable of disparagement." Sullivan, 2011 VT 37, ¶ 11. Plaintiff thus had the title necessary to sustain her slander-of-title claim, even before the court order reforming the Leisey deed becomes final.

### B. False Statement

¶ 41.    Having found that plaintiff had the necessary ownership interest to sustain a claim for slander of title, we next consider whether she proved that Mr. Kolodziej "published a false statement concerning" her title. Sullivan, 2011 VT 37, ¶ 8.

¶ 42.    After trial, the court found that Mr. Kolodziej "persuaded the Adams heirs to sign a warranty deed to him and his wife, purporting to transfer" the disputed parcel. Defendants recorded the deed in the town land records. The court concluded that the recording of the deed constituted publication of a false statement concerning plaintiff's title.

¶ 43.    We agree. We have previously found that a falsely recorded lien satisfies the requirement for publication of a false statement. See Wharton, 2003 VT 19, ¶¶ 15-16. Mr. Kolodziej recorded the deed that amounted to a false claim of ownership of the disputed parcel, so he published a false statement concerning plaintiff's title.

## C. Malice

¶ 44.   Next, we must evaluate whether plaintiff proved that Mr. Kolodziej acted with the requisite malice. Sullivan, 2011 VT 37, ¶ 8. The trial court made the following uncontested factual findings.

¶ 45.   Plaintiff and her former husband, Mr. Leisey, used all their property, including the disputed parcel, from the moment she moved into the home.  The disputed parcel had apple trees, berry bushes, a fire pit, and a basketball hoop.  There had been a school-bus turnaround on the parcel, but it had not been used for many years.  Plaintiff acknowledged that neighbors sometimes parked in that area when the roads were too icy.

¶ 46.   Mr. Kolodziej owns property on the other side of the road from the disputed parcel. He had seen apple trees, a basketball hoop, and a trailer parked on the disputed parcel before he arranged for the land to be deeded to him and his wife.  He explained that he wanted the property as a place to plow snow from the steep road he lives on.

¶ 47.   Mr. Kolodziej testified that he had no training in title searches or surveying, and that he did not hire an attorney to search the title to the disputed parcel.  He learned from plaintiff's neighbor that there might be a "gap in the deeds."  That neighbor suggested that plaintiff might not have legal title to the disputed parcel.  After learning of this possibility, he reviewed various town records, including minutes from selectboard meetings discussing the parcel.

¶ 48.   Minutes from three selectboard meetings reflect that the neighbor told the board that "the property owners [of the disputed parcel] are now deceased and their heirs were under the impression that this was town property and will sign this over to the town." The meeting minutes also reflect that the town's zoning administrator explained that the town had an easement for ditch maintenance, but "there is no triangular split" and that the "owner of record is willing to allow the turnaround but is not interested in a land split."  The zoning administrator also explained that she did not believe that the Adams heirs owned the disputed parcel.

¶ 49. Mr. Kolodziej did not contact the town's zoning administrator to figure out what she meant by "no triangular split," nor did he inquire about the "owner of record." Instead, he reviewed the deeds in the town land records and concluded, correctly, that the deeds did not include the disputed parcel. But he did not contact plaintiff. He did not see the subdivision permit creating two parcels, nor did he check probate records to determine if the Adamses had an estate through which the parcel was transferred to their heirs. He was aware that plaintiff had applied for a zoning permit to install a fence on the disputed property, but because he saw question marks on the application, he assumed that she did not own the property.

¶ 50. Mr. Kolodziej concluded based on his investigation that the disputed parcel "existed" and that it must be owned by the Adams heirs. He then arranged for the heirs to deed him the parcel. At no time did the signatory Adams heir think that he owned the parcel.

¶ 51. Sometime after Mr. Kolodziej procured the deed purporting to grant him title to the disputed property, he told plaintiff's partner that he and his wife now owned the disputed parcel and asked plaintiff's partner to remove personal property that remained on that land, including a kayak, a hammock, and some other items.

¶ 52. Based on the foregoing, the court concluded that Mr. Kolodziej acted with malice, citing Wharton. See 2003 VT 19, ¶ 16. Malice in a slander-of-title action requires "conduct manifesting personal ill will, evidencing insult or oppression, or showing a reckless or wanton disregard of plaintiff's rights." Id. (quoting Ainsworth v. Franklin Cnty. Cheese Corp., 156 Vt. 325, 332, 592 A.2d 871, 875 (1991)).

¶ 53. Though the court found that Mr. Kolodziej "did not have personal ill will" towards plaintiff, he "acted with reckless disregard of the possibility that she had a claim to the disputed property." The court explained that Mr. Kolodziej did a "thorough investigation of the property[] that nonetheless avoided any contact with the plaintiff." He also did not contact a lawyer to search

15

the titles. The court concluded that his "conduct essentially amounted to a knowing disregard of the likelihood" that plaintiff "might have legal claims to the property."

¶ 54. The trial court applied the correct legal standard, and we see no error in the conclusions it drew. The undisputed evidence demonstrates that Mr. Kolodziej located a parcel of land where the deeds in the land records did not comport with town maps or with plaintiff's usage of the land. He then arranged to have the parcel deeded to himself and his wife without speaking to the person who he saw had been using the land or the town zoning administrator. This evinces a "reckless disregard" for plaintiff's rights. Wharton, 2003 VT 19, ¶ 16.

¶ 55. Defendants urge us to reverse, warning that this interpretation of the malice standard "would mandate that any purchaser of a parcel with ambiguous bounds would have the obligation prior to taking title to the disputed parcel to research and notify any other possible claimants to a portion of the parcel prior to filing in the land records his own deed." We disagree. Mr. Kolodziej does not contest that he was not a bona fide purchaser for value. A bona fide purchaser may be entitled to greater protection from claims of slander of title. But that is not the situation before us, and we need not reach the issue.

## D. Special Damages

¶ 56. Finally, we must evaluate whether Mr. Kolodziej's false statement caused plaintiff "special damages." Sullivan, 2011 VT 37, ¶ 8. The trial court, relying on Colquhoun, concluded that the "costs of litigation and attorneys' fees in the action for slander of title cannot constitute the required special damages" but that the "prevailing party in a slander of title action may recover as special damages those attorney fees and expenses accruing from removing the cloud on the title." 684 A.2d at 413 (quotation and brackets omitted).

¶ 57. We have never clarified what might constitute special damages for a slander-of-title claim in Vermont. We have affirmed dismissal of a claim of slander of title for lack of evidence tying "any damages to the alleged slander." Gardner v. West-Col, Inc., 136 Vt. 381, 387,

16

392 A.2d 383, 387 (1978) (quotation marks omitted). We have also squarely held that pecuniary losses from a lost sale of the property at issue suffice to establish special damages. Wharton, 2003 VT 19, ¶¶ 15, 18. We must now decide whether evidence of damages in the form of legal expenses incurred in clearing title are "special damages" that can sustain a slander-of-title claim. We conclude that they are.

¶ 58. The Colquhoun court explained that it was adopting "the majority position that attorney fees incurred in removal of a cloud on a title caused by a spurious and vexatious deed do constitute proof of special damages in a slander-of-title action even in the absence of proof of an impairment of vendibility." 684 A.2d at 411. Defendants attempt to distinguish Colquhoun by explaining that their recording of the deed purporting to give themselves the disputed parcel was not "spurious and vexatious," as was the deed in Colquhoun, so the rule allowing special damages to clear the cloud on title should not apply. We disagree. Most states to have considered the issue conclude that litigation expenses incurred in combating the effect of slander of title constitute special damages. Compare J. Pearson, What Constitutes Special Damages in Action for Slander of Title, 4 A.L.R.4th 532, § 9 (1981) (listing cases from more than twenty states allowing recovery for litigation expenses to clear cloud on title) with id. § 10 (listing cases from four states barring recovery for litigation expenses).

¶ 59. Numerous authorities support our conclusion. See 50 Am. Jur. 2d Libel and Slander § 534 (stating that plaintiff may "recover in a slander of title action the attorney's fees incurred in removing the cloud [defendant placed] upon the plaintiff's property title"); id. § 526 (providing that special damages include "litigation costs or expenses sustained in removing the cloud on the property owner's title caused by the slanderous statement"); Restatement (Second) of Torts § 633(1)(b) (1977) (stating that publisher of "injurious falsehood" is subject to liability for "the expense of measures reasonably necessary to counteract the publication"); see also Davis v. Wood, 143 P.2d 740, 745 (Cal. Ct. App. 1943) (concluding "elements of damages are the loss

17

caused by the impairment of vendibility and the cost of clearing the title"); Fountain v. Mojo, 687 P.2d 496, 501 (Colo. App. 1984) (concluding one who publishes "an injurious falsehood is subject to liability for the expense of measures reasonably necessary to counteract the publication" (quotation and alteration omitted)); Glusman v. Lieberman, 285 So. 2d 29, 31-32 (Fla. Dist. Ct. App. 1973) (concluding "expense of litigation to remove the cloud cast upon the title" constitutes special damages in slander-of-title action); Home Invs. Fund v. Robertson, 295 N.E.2d 85, 88 (Ill. App. Ct. 1973) (concluding "costs and attorney's fees which directly flow from the wrongful disparagement" including "fees directly related to the quieting of [] title" constitute special damages for slander-of-title claim); Summa Corp. v. Greenspun, 655 P.2d 513, 515 (Nev. 1982) (concluding attorney's fees are recoverable as special damages because "plaintiff would not incur any expenses in removing the cloud from [her] title" but for "the wrongful act of slander").

¶ 60.    The modern trend is to find that attorney's fees expended to clear the cloud on title are recoverable special damages in a slander-of-title action.  The Washington Supreme Court somewhat recently overruled its 1909 decision disallowing recovery of attorney's fees because it found that barring recovery for such costs "represent[ed] an outdated approach."  Rorvig v. Douglas, 873 P.2d 492, 497 (Wash. 1994).  Though the court acknowledged that the "American rule" for fees generally provides that the prevailing party does not recover attorney's fees, it found that attorney's fees are recoverable for slander-of-title claims because "defendants actually know their conduct forces the plaintiff to litigate."  Id.

¶ 61.    As noted above, not every court to consider the issue has allowed attorney's fees expended to clear the cloud on title to constitute special damages.  See, e.g., Hicks v. McLain's Bldg. Materials, Inc., 433 S.E.2d 114, 116 (Ga. Ct. App. 1993) (explaining that "costs and fees will be present in any suit and treating them as special damage would render the special damage requirement meaningless").  We think the majority of states and the Restatement have the better approach.  Fees expended in prosecuting the slander-of-title action are not recoverable as special

18

damages in that action, but the "costs of actions taken to clear a plaintiff's title and such other expenses that are reasonably necessary to counteract the disparagement" constitute "special damages for which the tortfeasor should bear liability." Colquhoun, 684 A.2d at 411 (quotation marks omitted).

¶ 62. On appeal, defendants do not appear to contest the trial court's calculation of plaintiff's costs expended to clear her title. Instead, defendants contend that the attorney's fees expended were not "causally connected to the recording of" the deed they recorded to grant themselves the disputed parcel and were instead expended because of the failure of title searchers in plaintiff's line of title to recognize the error in the Leisey deed. We disagree. But for defendants recording a deed to claim the disputed parcel as their own, plaintiff would not have incurred "any expenses in removing the cloud from [her] title." Summa Corp., 655 P.2d at 515. Defendants' conduct essentially "force[d] the plaintiff to litigate." Rorvig, 873 P.2d at 497. Thus, defendants' actions caused the special damages at issue here.

### III. Conclusion

¶ 63. We affirm the trial court's grant of summary judgment to plaintiff on her claim for reformation of the deeds in her line of title. We further conclude that her reformed deed relates back to the grant of the original deed, and that plaintiff's interest in the disputed parcel can sustain her slander-of-title claim even before judicial confirmation of the deed reformation becomes final. Finally, we conclude that attorney's fees and costs expended in clearing her clouded title constitute the special damages necessary to sustain plaintiff's slander-of-title claim.

Affirmed.

FOR THE COURT:

_____
Associate Justice

19